# EXHIBIT 1

FILED
DALLAS COUNTY
4/9/2019 4:56 PM
FELICIA PITRE
DISTRICT CLERK

JAVIER HERNANDEZ

CAUSE NO. _____

DC-19-05139

| | | |
|---|---|---|
| VELA WOOD, P.C., RADNEY WOOD, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND KEVIN VELA, | § | |
| INDIVIDUALLY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | 193RD |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| ASSOCIATED INDUSTRIES | § | |
| INSURANCE COMPANY, INC., | § | |
| | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION FOR DECLARATORY JUDGMENT

Plaintiffs Vela Wood, P.C., Kevin Vela, and Radney Wood (collectively the "Vela Wood Plaintiffs") file this Original Petition for Declaratory Judgment against Defendant Associated Industries Insurance Company, Inc. (the "Insurance Company"), as follows.

### I.   DISCOVERY CONTROL PLAN AND STATEMENT OF RELIEF

1.   Plaintiffs intend to conduct discovery under Level 3 of the Texas Rules of Civil Procedure 190.4.

2.   Plaintiffs seek non-monetary relief in the form of a declaratory judgment that the Insurance Company has a contractual duty to defend.

### II.   THE PARTIES

3.   Plaintiff Vela Wood, P.C., a law firm, is a professional corporation organized under the laws of the State of Texas.  Its principal place of business is located at 5307 E. Mockingbird Lane, Suite 802, TX 75206.

4.   Plaintiff Kevin Vela is an individual who resides in Dallas County, Texas.  Mr. Vela is a founding shareholder and attorney at Vela Wood, P.C.

**EXHIBIT 5**

**PLAINTIFFS' ORIGINAL PETITION FOR DECLARATORY RELIEF**                    **PAGE 1**

5.     Plaintiff Radney Wood is an individual who resides in Travis County, Texas.  Mr. Wood is a shareholder and attorney at Vela Wood, P.C.

6.     Defendant Associated Industries Insurance Company, Inc. is an insurance company that has issued or has been assigned an insurance policy issued to the Vela Wood Plaintiffs. Associated Industries Insurance Company is a foreign corporation with its principal place of business in Florida.   Associated Industries Insurance Company is a surplus lines insurance company registered with the Texas Department of Insurance and engages in business in Texas, but does not have a registered agent for service of process in the State of Texas.  The Texas Insurance Code designates the Commissioner of Insurance as Associated Industries Insurance Company's agent for service of process.  The Commissioner of Insurance can be served process by mailing the Original Petition for Declaratory Relief and the Citation to Chief Clerk Office, 333 Guadalupe, MC 113-2A, P.O. Box 149104, Austin, Texas 78714-9104.

### III.   JURISDICTION

7.     This Court has jurisdiction over the parties and subject matter of this dispute, including jurisdiction to award all relief prayed for herein.

8.     This Court has personal jurisdiction over the Insurance Company because it is registered with the Texas Department of Insurance, it regularly transacts business in Texas, and the Vela Wood Plaintiffs' causes of actions arise from and are directly related to the Insurance Company's contacts with Texas.  The exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

### IV.   VENUE

9.     Venue is proper in this Court under TEX. CIV. PRAC. & REM. CODE §15.032 because this is a suit on an insurance policy and it is the county in which the policyholder resides.

10.    Venue is also proper in this Court under TEX. CIV. PRAC. & REM. CODE §15.032

because it is the county where all or a substantial part of the events giving rise to the claim occurred.

## V.    FACTUAL ALLEGATIONS

11.    The Insurance Company issued to Vela Wood, P.C., a Lawyers' Professional Liability Insurance Policy, No. AES1045271 01, effective March 6, 2017 to March 6, 2018 (hereinafter the "2017 Policy," and attached hereto as <u>Exhibit A</u>), for an annual premium of $20,225.00.

12.    The Vela Wood Plaintiffs renewed the 2017 Policy for a subsequent annual policy period.  The Insurance Company issued to Vela Wood, P.C., Policy No. AES1045271 03, effective March 6, 2018 to March 6, 2019 (hereinafter the "2018 Policy," and attached hereto as <u>Exhibit B</u>), for an additional annual premium of $28,225.00.

13.    The Insurance Company agreed, in both the 2017 Policy and the 2018 Policy (collectively, the "Policies"), to defend Vela Wood, P.C. against any Claim, as follows:

> As part of and subject to the Policy's Limits of Liability, the Company shall have the right and duty to defend any Claim against the Insured to which the Policy applies, even if the allegations of the Claim are groundless, false, or fraudulent.

14.    The Insuring Agreement contains the following language setting forth the Claims to which the Policies apply:

> The Company shall pay Damages and Claim Expenses, in excess of the Self-Insured Retention identified in the Declarations, if applicable, and subject to the Policy's Limit of Liability, that the Insured shall become legally obligated to pay as a result of a Claim made against the Insured for a Wrongful Act, provided that (i) the Claim is first made against the Insured and reported to the Company, in writing, during the Policy Period or the Extended Reporting Period, if applicable; (ii) the Insured has no knowledge of such Wrongful Act prior to the Inception Date of this Policy; and (iii) such Wrongful Act took place on or after the Retroactive Date set forth in the Declarations Page of this Policy and prior to the end of the Policy Period.

15.    The Policies are claims-made-and-reported policies, meaning if there is a "Claim" made against the Vela Wood Plaintiffs during a Policy Period, the Claim should be reported to the Insurance Company during that Policy Period.

16.     According to the Insurance Company's strict interpretation of the Policies, if Vela Wood, P.C. receives a Claim the evening of March 5 (the last day of the original Policy), but does not report it to the Insurance Company until the morning of March 6 (the first day of renewed Policy), the reporting of the Claim is untimely and the Policies do not provide coverage.

17.     The duty to report, however, is not triggered until there is a "Claim," as defined by the Policies.  The Policies define "Claim" as "a written demand received by the Insured for monetary Damages which *alleges a Wrongful Act*."  And a "Wrongful Act" is defined as "any *actual or alleged negligent act*, *error, or omission committed or attempted* in the rendering or failing to render Professional Services by any Insured on behalf of the Named Insured, including but not limited to Personal Injury."

18.     In other words, the Policies define Claim in such a way that in order for there to be a duty to report a Claim to the Insurance Company, it must allege facts that inform the Insured of the act, error, or omission that was actually or allegedly committed or attempted by the Insured.

19.     Moreover, the Texas Supreme Court has held that, when analyzing a petition to determine if a duty is triggered, the focus must be on "the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  That is, "the analytical focus should be on *what caused the harm complained of*, not what technical cause of action the plaintiff asserted." *NetSpend Corp. v. AXIS Ins. Co.*, Cause No. A-13-CA-456-SS, 2014 WL 3568355, at *7 (W.D. Tex. Jul. 18, 2014) (emphasis in original) (citing *Nat'l Union*, 939 S.W.2d at 141).

20.     During the last month of the 2017 Policy, Vela Wood, P.C. was served with a petition that was so devoid of factual allegations that it does not constitute a Claim under the terms of the Policies or under Texas law.

21.     In February 2017, Vela Wood, P.C, and Mr. Wood were served with JB&A Extended Warranties, LLC's ("JB&A") Original Petition ("Original Petition," attached hereto as <u>Exhibit C</u>), which had been filed in the 192nd Judicial District Court of Dallas County, Texas (the "JB&A Lawsuit").

22.     The Original Petition asserted technical causes of action against Vela Wood, P.C. and Mr. Wood individually, and it recited the elements of those causes of action.  But it did not contain any factual allegations to support any of the Original Petition's legal theories, and it did not establish what acts, errors, or omissions caused the harm complained of by JB&A.

23.     For instance, other than identifying the parties, the only factual allegation asserted in the Original Petition was that Vela Wood, P.C. represented JB&A "as recently as December 2017." The Original Petition did not identify a specific actual or alleged negligent act, error, or omission committed or attempted by Vela Wood, P.C., or Mr. Wood.  Moreover, the Original Petition did not allege a date or approximate date when the act, error or omission occurred.

24.     No objective reading of the Original Petition alleges any "Wrongful Act" by the Vela Wood Plaintiffs, and thus the Original Petition does not constitute a "Claim" made during the 2017 Policy.

25.     On March 9, 2018, Vela Wood, P.C., and Mr. Wood filed Special Exceptions to the Original Petition on the grounds that the Original Petition failed to plead any facts to support any of the causes of action, and set a hearing on the Special Exceptions for April 9, 2018.

26.     On April 5, 2018, before the scheduled hearing, JB&A filed its First Amended Petition (the "Amended Petition," attached hereto as <u>Exhibit D</u>), adding Mr. Vela as a defendant (the "Amended JB&A Lawsuit").  Significantly, for the first time, JB&A made factual allegations of acts and omissions by the Vela Wood Plaintiffs in the rendering or failing to render professional legal

services.

27.     The Amended Petition constituted a Claim for a Wrongful Act made during the 2018 Policy.

28.     In May 2018, during the Policy Period for the 2018 Policy, Vela Wood, P.C. timely reported the Claim in the Amended JB&A Lawsuit to the Insurance Company.

29.     On July 27, 2018, the Insurance Company sent a letter to the Vela Wood Plaintiffs denying any defense or indemnity coverage for the Amended JB&A Lawsuit, on the incorrect basis that the Claim was during the 2017 Policy, but reported during the 2018 Policy.

30.     On September 12, 2018, counsel for the Vela Wood Plaintiffs sent a letter to the Insurance Company disputing its denial of coverage, calling attention to the fact that the Original Petition contained only one factual allegation; namely, Vela Wood, P.C. are attorneys that represented JB&A as recently as December 2017.   The letter pointed out that the Original Petition did not make any factual allegations that would identify the supposed "Wrongful Act", so the Original Petition could not be a "Claim" as defined by the Policies.

31.     Despite its obvious duty to defend, the Insurance Company continues to refuse to provide coverage as promised in the Policies.

32.     Because the Insurance Company refused to provide the Vela Wood Plaintiffs a defense or otherwise cover their litigation costs, the Vela Wood Plaintiffs suffered and continue to suffer damages.  Specifically, the Vela Wood Plaintiffs have incurred and continue to incur attorneys' fees while defending themselves in the Amended JB&A Lawsuit—fees that should have been and should continue to be covered by the Policies issued by the Insurance Company.

33.     As a result of the numerous efforts made to enforce their rights under the Policies and the Insurance Company's continued breach of the parties' contracts, the Vela Wood Plaintiffs

instituted this action to enforce their right to defense coverage.

## VI.   CAUSES OF ACTION

### A.   Count One: Breach of Contract

34.   The Vela Wood Plaintiffs incorporate by reference the preceding paragraphs of this Petition.

35.   The Insurance Company agreed to defend any Claim against the Vela Wood Plaintiffs in exchange for Vela Wood, P.C.'s payment of yearly policy premiums for the 2017 and 2018 Policies, totaling nearly $50,000. The Vela Wood Plaintiffs fully performed under these agreements by making these policy premiums each year. Despite the agreements between the Vela Wood Plaintiffs and the Insurance Company and despite the Vela Wood Plaintiffs' full performance of their obligations to pay the applicable premiums for coverage, the Insurance Company has not accepted the Vela Wood Plaintiffs' requests for the Insurance Company to provide them with defense costs for the Amended JB&A Lawsuit. The Vela Wood Plaintiffs have suffered and continue to suffer damages as a result of the Insurance Company's breach.

### B.   Count Two: Declaratory Judgment (TEX CIV. PRAC. & REM. CODE, Chapter 37)

36.   The Vela Wood Plaintiffs incorporate by reference the preceding paragraphs of this Petition.

37.   The Vela Wood Plaintiffs bring this claim pursuant to the Uniform Declaratory Judgments Act because an actual controversy exists concerning the Insurance Company's breach of its obligation to provide the Vela Wood Plaintiffs a defense against the Amended JB&A Lawsuit.

38.   The Vela Wood Plaintiffs have formally and timely requested that the Insurance Company defend them in the Amended JB&A Lawsuit, yet the Insurance Company has refused to exercise its duty to defend the Vela Wood Plaintiffs in the Amended JB&A Lawsuit.

39.   An actual, justiciable controversy presently exists between the parties concerning the

Insurance Company's obligation to defend the Vela Wood Plaintiffs in the Amended JB&A Lawsuit, to reimburse the Vela Wood Plaintiffs for all incurred attorneys' fees and defense costs in the Amended JB&A Lawsuit to date, and to continue to reimburse the Vela Wood Plaintiffs for all attorneys' fees and defense costs to be incurred in the Amended JB&A Lawsuit.

40.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liability that exist among the parties.

41.     Therefore, the Vela Wood Plaintiffs seek a declaratory judgment that, pursuant to the 2018 Policy, the Insurance Company owes the Vela Wood Plaintiffs a duty of defense for the Amended JB&A Lawsuit, including the reimbursement of attorneys' fees and defense costs already incurred.

## VII.   CONDITIONS PRECEDENT

42.     Any and all conditions precedent to bring this suit and to the Vela Wood Plaintiffs' right to recover on the claims states herein have been satisfied, have occurred, or have been performed.

## VIII.   ATTORNEYS' FEES AND COSTS

43.     As a result of the Insurance Company's breach of its duty to defend as described herein, the Vela Wood Plaintiffs have been required to hire the undersigned attorneys to institute this action.  Accordingly, the Vela Wood Plaintiffs hereby request that the Court award their reasonable and necessary attorneys' fees and costs in pursuing a declaratory judgment and bringing their breach of contract claim against the Insurance Company.

## IX. JURY DEMAND

44.     The Vela Wood Plaintiffs demand a trial by jury of all issues so triable in this matter, and respectfully requests that this matter be placed on the jury docket.

## X. PRAYER

45.    For these reasons, the Vela Wood Plaintiffs respectfully request that the Insurance Company be cited to appear and answer and, after a final hearing, the Court enter a judgment as follows:

    a.     A declaratory judgment that the Insurance Company has a duty to defend, as requested by the Vela Wood Plaintiffs above;

    b.     An award to the Vela Wood Plaintiffs of actual damages resulting from Insurance Company's breach of contract;

    c.     Reasonable attorneys' fees incurred in connection with this action;

    d.     Pre- and post-judgment interest;

    e.     Costs of the suit;

    f.     An award to the Vela Wood Plaintiffs of all other relief, in law and in equity, to which it may show themselves to be entitled.

DATED:  April 9, 2019

Respectfully submitted,

*/s/  C. Jeffrey Price*
**C. Jeffrey Price**
Texas State Bar No. 24041724
**Megan E. Servage**
Texas State Bar No. 24110347

**HEDRICK KRING, PLLC**
1700 Pacific Ave., Suite 4650
Dallas, Texas 75201
Telephone:  (214) 880-9600
Telecopier:  (214) 481-1844
jeff@hedrickkring.com
megan@hedrickkring.com

**ATTORNEYS FOR PLAINTIFFS**

# COMMERCIAL LINES POLICY

## Associated Industries Insurance Company, Inc.

Associated Industries Insurance Company, Inc.

P.O. Box 318004
Cleveland, OH 44131-0880

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– COVERAGE FORMS
   APPLICABLE ENDORSEMENTS

AES JACKET 08 11



EXHIBIT A

Associated Industries Insurance Company, Inc.

In Witness Whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

President

Elissa Pacheco

AES JACKET 08 11

Associated Industries Insurance Company, Inc.                    Policy Number: AES1045271 01
Administered through:

AmTrust E&S Insurance Services                    Named Insured: Vela Wood, PC
160 Federal Street, 3rd Floor
Boston, MA 02110

## LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATIONS

| Renewal of: | N/A | Policy Period: | From | 3/6/2017 | To | 3/6/2018 |
|---|---|---|---|---|---|---|

| Retroactive Date: | 12/28/2010 | Prior and Pending Litigation Date: | 3/6/2017 |
|---|---|---|---|

**Named Insured and Address**
Vela Wood, PC
5307 E. Mockingbird Lane, Suite 802
Dallas , TX 75202

**Broker Name and Address**
Bryan Rader
12404 Park Central, Suite 380
Dallas, TX 75251

**Professional Services Covered by this Policy:**          Per Policy Form

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Each Claim | $ | 500,000 |
| Policy Period Aggregate | $ | 1,000,000 |

**DISCIPLINARY PROCEEDING COVERAGE**

| | | |
|---|---|---|
| Each Disciplinary Hearing | $ | 25,000 |
| Policy Period Aggregate | $ | 100,000 |

**NETWORK SECURITY AND PRIVACY COVERAGE**

| | | |
|---|---|---|
| Each Claim | $ | 100,000 |
| Policy Period Aggregate | $ | 100,000 |

**RETENTION**                                    **SELF-INSURED RETENTION**

| | | |
|---|---|---|
| Each Claim | $ | 10,000 |
| Policy Period Aggregate | $ | None |

**MAXIMUM LIMIT**

| | | |
|---|---|---|
| Each Claim | $ | 500,000 |
| Policy Period Aggregate | $ | 1,000,000 |

**TOTAL PREMIUM FOR THIS COVERAGE**          $          20,225.00

Earned Minimum Premium shall be 25 percent of the Total Premium

| Forms and Endorsements Applicable |
|---|
| See Forms and Endorsements Schedule |

THIS IS A CLAIMS MADE AND REPORTED POLICY, EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE.  PLEASE READ THE POLICY CAREFULLY.

THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EPXENSES, UNLESS THE POLICY IS OTHERWISE ENDORSED.  AMOUNTS INCURRED FOR CLAIM EXPENSES AND DAMAGES SHALL ALSO BE APLIED AGAINST THE SELF-INSURED RETENTION, UNLESS THE POLICY IS OTHERWISE ENDORSED.

TERMS THAT APPEAR IN BOLD TYPE, OTHER THAN THE CAPTION TITLES, HAVE SPECIAL MEANING.
PLEASE REFER TO SECTION II. DEFINITIONS.

These Declarations, the completed and signed **Application**, and this policy with endorsements shall constitute the full and complete contract between the Insured and the Company as of the effective date unless and until otherwise endorsed.

Issued Date:          3/7/2017

AESDEC PL 120 0114



**12404 Park Central Drive, Suite 380**
**Dallas, TX  75251**
**Ph: 214-865-7200**
**www.rtspecialty.com**

17033190

This Face Page attaches to and becomes a part of the following policy:

Insured: Vela Wood, PC
Policy #: AES1045271
Effective Date: 3/6/2017
Date Policy/Endorsement Received: 3/7/2017
Zip Code of Risk Location: 75206

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS SURPLUS LINE COVERAGE UNDER THE TEXAS INSURANCE STATUTES. THE TEXAS DEPARTMENT OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING THIS COVERAGE, AND THE INSURER IS NOT A MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCATION CREATED UNDER CHAPTER 462, INSURANCE CODE. CHAPTER 225, INSURANCE CODE, REQUIRES PAYMENT OF A 4.85 PERCENT TAX ON GROSS PREMIUM.
Rev. 4/1/09

Name and Address of Insurer:
Associated Industries Insurance Co, Inc

Name and Address of Surplus Lines Agent:
R-T Specialty, LLC
180 N. Stetson Avenue, Suite 4600
Chicago, IL 60601

| | |
|---|---|
| Premium: | $20,000.00 |
| TRIA Premium: | |
| Fees: | Brokerage Fee   $250.00<br>Policy Fee - Carrier        $225.00 |
| Surplus Lines Tax: | $993.04 |
| Stamping Fee: | $30.71 |
| Total: | $21,498.75 |

# RT
RYAN [SM]
TURNER
SPECIALTY

**12404 Park Central Drive, Suite 380**
**Dallas, TX  75251**
**Ph: 214-865-7200**
**www.rtspecialty.com**

17033190

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may contact your (title) at (telephone number). | Puede comunicarse con su (title) al (telephone number). |
| You may call Associated Industries Insurance Co, Inc's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de Associated Industries Insurance Co, Inc's para informacion o para someter una queja al: |
| **1-XXX-XXX-XXXX** | **1-XXX-XXX-XXXX** |
| You may also write to Associated Industries Insurance Co, Inc at: | Usted tambien puede escribir a Associated Industries Insurance Co, Inc |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance: | Puede escribir al Departamento de Seguros de Texas: |
| P. O. Box 149104 Austin, TX 78714-9104 Fax: (512) 490-1007 Web: http://www.tdi.texas.gov E-mail: ConsumerProtection@tdi.state.tx.us | P. O. Box 149104 Austin, TX 78714-9104 Fax: (512) 490-1007 Web: http://www.tdi.texas.gov E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the (agent) (company) (agent or the company) first.  If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el (agente) (la compania) (agente o la compania) primero.  Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |



**12404 Park Central Drive, Suite 380**
**Dallas, TX  75251**
**Ph: 214-865-7200**
**www.rtspecialty.com**

17033190

| | |
|---|---|
| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA**: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |

This page intentionally left blank



Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1045271 01

**Named Insured:**
Vela Wood, PC

## COMMON POLICY DECLARATIONS

| **Policy Number** | AES1045271 01 | **Policy Period:** | **From** | 3/6/2017 | **To** | 3/6/2018 |
|---|---|---|---|---|---|---|

12:01 a.m. Standard Time at the Named Insured's Address

| **Transaction** | New Business |
|---|---|

| **Named Insured and Address** | **Broker** |
|---|---|
| Vela Wood, PC | R-T Specialty, LLC |
| 5307 E. Mockingbird Lane, Suite 802 | 12404 Park Central Drive, #380 |
| Dallas  TX 75202 | Dallas TX 75231 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| Lawyers | Individual | |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| **COVERAGE PART DESCRIPTION** | | **PREMIUM** |
|---|---|---|
| **POLICY PREMIUM** | $ | **20,000.00** |
| **DEPOSIT PREMIUM** | $ | **20,000.00** |
| **TERRORISM COVERAGE** | $ | **Excluded** |
| **POLICY FEE** | $ | **225.00** |
| **TOTAL DEPOSIT PREMIUM** | $ | **20,225.00** |

| Minimum Retained Audit Premium | $ 5,056.25 | Minimum Retained Premium | $ 5,056.25 |
|---|---|---|---|

| Forms applicable to all Coverage Parts: | See Forms and Endorsements schedule |
|---|---|

Countersigned this _____  By _____

Authorized Representative

Issued Date:      3/7/2017

INSURED COPY

CPPMDEC 0411

This page intentionally left blank

Associated Industries Insurance Company, Inc.  
Administered through: AmTrust E & S Insurance Services, Inc.  
160 Federal Street, 3rd Floor  
Boston, MA 02109  

**Policy Number:**  
AES1045271 01  
**Named Insured:**  
Vela Wood, PC

# FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|----------|------|----------|-------------|
| PROF | AESPL005 | (01/14) | LAWYERS' PROFESSIONAL LIABILITY INSURANCE POLICY |
| PROF | AESPL014 | (01/14) | POLICYHOLDERS GUIDE TO REPORTING A PROFESSIONAL LIABILITY CLAIM |
| PROF | AESPL017 | (01/14) | TOTAL TERRORISM EXCLUSION |
| PROF | AESPL031 | (01/14) | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PROF | AESPL048 | (01/14) | 50/50 CONSENT TO SETTLE CLAUSE FOR LAWYERS |
| PROF | AESPL050 | (01/14) | MINIMUM RETAINED PREMIUM ENDORSEMENT |
| PROF | AESPL088 | (01/14) | OPTIONAL EXTENDED REPORTING PERIOD AMENDMENT |
| PROF | AESPL091 | (01/14) | SPLIT RETRO DATE ENDORSEMENT |
| PROF | AESPL103 | (01/14) | COVERAGE EXTENSION – CRISIS MANAGEMENT |
| PROF | AESPL111 | (01/14) | SELF INSURED RETENTION AMENDMENT FOR ARBITRATION OR MEDIATION |
| PROF | AESPN | (08/11) | ASSOCIATED INDUSTRIES INSURANCE COMPANY PRIVACY POLICY |

CPPMFORMSCHED

This page intentionally left blank

# Service of Suit

Service of process for any suit instituted against the Company concerning this Policy may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his/her successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder and arising out of this Policy.

The Company hereby designates:

Corporation Service Company
d/b/a CSC-Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

as the person(s)/organization to whom the Superintendent, Commissioner, or Director of Insurance or other specified person is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this Policy                                                                                      arises.

This page intentionally left blank



AmTrust E&S Insurance Services
An AmTrust Financial Company

# LAWYERS' PROFESSIONAL LIABILITY
# INSURANCE POLICY

### THIS IS A CLAIMS MADE AND REPORTED POLICY

**THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY IN ACCORDANCE WITH THE TERMS OF THIS POLICY.  CLAIM EXPENSES REDUCE THE LIMIT OF LIABILITY.  PLEASE REVIEW THIS POLICY CAREFULLY.**

In consideration of the payment of the premium, and the undertaking of the **Insured** to pay the Retention herein, and in reliance upon all statements made and information contained in the **Application**, which is attached hereto and made a part hereof, and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the **Company** and the **Insured** agree as follows:

**I.    INSURING AGREEMENTS**

A.    The **Company** shall pay **Damages** and **Claim Expenses,** in excess of the Self-Insured Retention identified in the Declarations, if applicable, and subject to the Policy's Limit of Liability, that the **Insured** shall become legally obligated to pay as a result of a **Claim** made against the **Insured** for a **Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**.

B.    If Each Claim and Policy Period Aggregate limits have been purchased for Network Security and Privacy coverage as designated in the Declarations, the **Company** shall pay **Damages** and **Claims Expenses** resulting from any **Claim** first made against the **Insured** for a **Network Security Wrongful Act** or **Privacy Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Network Security Wrongful Act** or **Privacy Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Network Security Wrongful Act** or **Privacy Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**.

C.    **Defense.**  As part of and subject to the Policy's Limit of Liability, the **Company** shall have the right and duty to defend any **Claim** against the **Insured** to which this Policy applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.  However, the **Company's** duty to defend shall terminate upon exhaustion of the applicable Limit of Liability by the payment of **Damages** and/or **Claim Expenses.**

D.    **Settlement of Claims.** The **Company** shall have the right to make such investigation, negotiation or settlement of a covered **Claim** that it deems expedient; provided, however, that the **Company** shall not settle any **Claim** without the consent of the **Insured**, which shall not be unreasonably withheld.  If the **Company** recommends a settlement and the **Insured** refuses to give written consent to such settlement as recommended by the **Company**, then the **Company's** liability shall not exceed the amount which the **Company** would have paid for **Damages** and **Claim Expenses** at the time the **Claim** could have been settled or compromised.

E. **Disciplinary Proceedings.**  The **Company** will reimburse the **Insured** for reasonable attorney fees, costs and expenses resulting from the investigation or defense of each **Disciplinary Proceeding** incurred as a result of a notice of proceeding both first received by the **Insured** and reported in writing to the **Company** during the **Policy Period**, and arising out of a covered **Wrongful Act**.  The maximum amount payable by the **Company** hereunder shall not exceed $25,000 for each **Disciplinary Proceeding**, subject to a maximum aggregate of $100,000 regardless of the number of **Insureds** or the number of **Disciplinary Proceedings**.  The amount payable under this Insuring Agreement is in addition to the Limit of Liability set forth in the Declarations and the Retention is not applicable to such amount.

## II.  DEFINITIONS

Wherever used in this Policy:

A. **"Application"** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insured** to the **Company** for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement.  **"Application"** shall also include all documents provided by the **Insured** to the **Company** in connection with the underwriting or issuance of this Policy and any information contained on the website(s) of the **Insured**, whether provided to the **Company** directly or indirectly through the use of public databases or similar sources. All such applications, attachments, and materials are deemed attached to and incorporated into this Policy.

B. **"Bodily Injury"** means physical injury, sickness or disease sustained by a person, including death resulting from an of these at any time.  **"Bodily Injury"** includes emotional distress, or mental anguish whether or not accompanied by physical injury, sickness or disease.

C. **"Claim"** means a written demand received by the **Insured** for monetary **Damages** which alleges a **Wrongful Act**, including:

   1. the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;

   2. institution of arbitration, mediation or other formal alternative dispute resolution proceeding;

   3. any written request to toll or waive a statute of limitations.

   A **Claim** for injunctive relief alleging any **Wrongful Act** for which insurance would have been granted under this Policy if **Damages** had been sought, will be considered a **Claim** for the purposes of this Policy, but only the **Claim Expenses** arising therefrom will be covered by this Policy**.**

D. **"Claim Expenses"** means:

   1. reasonable and necessary fees charged by an attorney designated by the **Company**;

   2. all other reasonable fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the **Company** or by the **Insured** with the written consent of the **Company**.

   **"Claim Expenses"** shall not include (i) salary expenses or wages of any employee or officer of the **Company** or any supervisory counsel retained by the **Company;** (ii) salary expenses or wages of the **Insureds**; or (iii) any fees, costs or expenses incurred in connection with any criminal proceedings or actions against an **Insured**.  The determination by the **Company** as to the reasonableness of **Claim Expenses** shall be conclusive on the **Insured**.

E. **"Company"** means the insurer named in the Declarations.

F. **"Computer System"** means computers and associated software, input and output devices, data storage devices, networking equipment and back up facilities.

G. **"Damages"** means any compensatory sum which the **Insured** becomes legally obligated to pay and includes:

1. monetary judgments or settlements;

2. punitive or exemplary damages to the extent such damages are insurable under the law most favorable to the insurability of such damages of any jurisdiction which has a substantial relationship to the **Insured**, the **Company**, this Policy or the **Claim**;

3. pre-judgment and post-judgment interest.

**"Damages"** shall not include:

1. taxes, fines or penalties, sanctions, whether imposed by law or otherwise (except as provided above with respect to punitive or exemplary damages);

2. the return, reduction or restitution of fees, expenses or costs for **Professional Services** performed or to be performed by the **Insured**, or disgorgement by any **Insured**;

3. matters uninsurable under the law pursuant to which this Policy is construed;

4. the cost of correcting, re-performing or completing **Professional Services**;

5. future profits, future royalties, costs of licensing, or other costs of obtaining future use; or the costs to comply with orders granting injunctive relief or non-monetary relief, including specific performance, or any agreement to provide such relief.

H. **"Disciplinary Proceeding"** means a proceeding alleging violation of any disciplinary rule or other professional misconduct before an administrative, regulatory or disciplinary board, or agency with authority to render a determination as to whether such alleged professional misconduct is to be subject to discipline. However, **"Disciplinary Proceeding"** shall not include a criminal proceeding or an Organizational Peer Review.

I. **"Denial of Service Attack"** means a malicious attack by a third party which is designed to slow or completely interrupt access to a targeted **Computer System** or website by other third parties authorized to gain access to that **Computer System** or website.

J. **"Insured"** means:

1. the **Named Insured** and any Predecessor Firm designated in the Declarations;

2. any individual or professional corporation who is or becomes a partner, officer, director, stockholder, per diem attorney, independent contract attorney, or employee of the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** in rendering **Professional Services**;

3. any individual or professional corporation who was a partner, officer, director, stockholder, per diem attorney, independent contract attorney, or employee of the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** in rendering **Professional Services**;

4. any individual or professional corporation designated "counsel" or "of counsel" to the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** for which a fee inures to the **Named Insured**;

5. any individual or professional entity, corporation, or partnership to whose financial assets and liabilities the **Named Insured** becomes the majority successor in interest during the **Policy Period** but only if:

    a.  within 60 days of becoming the majority successor in interest, the **Named Insured** has provided the **Company** with full particulars of such individual, professional entity, corporation, or partnership and the **Company**, which shall not be required to insure such individual, professional entity, corporation, or partnership, has agreed in writing to insure such individual, professional entity, corporation, or partnership; and

    b.  the **Named Insured** has paid the additional premium, if any, charged by the **Company** and has agreed to any amendment of the provisions of this Policy;

6.  the estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of death, incapacity, insolvency or bankruptcy, but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured**;

7.  the lawful spouse or lawful domestic partner of any **Insured**, if named as a co-defendant with such **Insured** solely by reason of such spouse's status as a spouse or such domestic partner's status as a domestic partner, or such spouse's or domestic partner's ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured**, but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured**.

All terms and conditions of this Policy including, without limitation, the Retention applicable to **Claims Expenses** and **Damages** incurred by the **Insured**, shall also apply to **Claims Expenses** and **Damages** incurred by the lawful spouse, domestic partner, estate, heirs, executors, administrators, assigns and legal representatives of such **Insured**.

K.  **"Insured's Computer System"** means computers and associated software, input and output devices, data storage devices, networking equipment and back up facilities:

1.  operated by and either owned by or leased to the **Insured**;

2.  operated by a third party service provider and used for the purpose of providing hosted services to the **Insured** or for processing, maintaining, hosting or storing electronic data of the **Insured**, pursuant to a written contract with the **Insured** for such services.

**"Insured's Computer System"** shall also include the websites of the **Insured** and any data, text, sounds, graphics, images or similar matter stored thereon.

L.  **"Interrelated Wrongful Acts"** means **Wrongful Acts** that are causally or logically related and include all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the **Claim** or **Claims** alleging such acts involve the same or different claimants, **Insureds** or legal causes of action.

M.  **"Malicious Code"** means unauthorized, corrupting or harmful software code, including computer viruses, Trojan horses, keystroke loggers, worms and logic bombs.

N.  **"Network Security"** means those activities performed by the **Insured,** or by others for or on behalf of the **Insured,** to protect against **Unauthorized Access** to, **Unauthorized Use** of, or a **Denial of Service Attack** by a third party directed against, or the transmission of **Malicious Code** to, the **Insured's Computer System.**

O.  **"Network Security Wrongful Act"** means any actual or alleged act, error, omission, neglect, or breach of duty by an **Insured** or the **Insured's Service Provider,** which causes a breach of the **Insured's Network Security** that results in:

1.  the theft, alteration, or destruction of electronic data on the **Insured's Computer System**;

2.  **Unauthorized Access** to or **Unauthorized Use** of the **Insured's Computer System**;

3.  the denial of an authorized user's access to the **Insured's Computer System**, unless the denial of such authorized user's access is caused by a mechanical or electrical failure outside the control of the **Insured**;

4.  the participation by the **Insured's Computer System** in a **Denial of Service Attack** directed against a third party's **Computer System**; or

5.  the transmission of **Malicious Code** from the **Insured's Computer System** to a third party's **Computer System**.

P.  **"Personal Information"** means:

1.  an individual's name, social security number, medical or healthcare data, other legally protected health information, drivers license number, state identification number, credit card number(s), debit card number(s), address, telephone number(s), bank or other financial institution account numbers, account histories, or passwords; and

2.  other nonpublic personal information, in any format, as defined in **Privacy Regulations**.

**"Personal Information"** shall not include information that is lawfully made available to the general public for any reason, including, but not limited to, information lawfully obtained from federal, state or local government agencies.

Q.  **"Personal Injury"** means injury other than **Bodily Injury** arising out of one or more of the following offenses:

1.  wrongful entry or eviction, trespass, eavesdropping, false arrest or malicious prosecution;

2.  invasion, infringement, interference with the right to privacy or of publicity, including false light, public disclosure of private facts, intrusion or commercial appropriation of name or likeness; or

3.  defamation, slander or libel.

R.  **"Policy Period"** means the period from the inception date of this Policy to the Policy expiration date stated in the Declarations or its earlier cancellation date, if any.

S.  **"Privacy Event"** means:

1.  an unauthorized disclosure or loss of:

    a.  **Personal Information** in the care, custody or control of any **Insured** or **Service Provider**; or

    b.  corporate information in the care, custody or control of any **Insured** or **Service Provider** that is specifically identified as confidential or proprietary and which is protected under a written nondisclosure or other confidentiality agreement or other similar contract; or

2.  a violation of any **Privacy Regulation**.

T.  **"Privacy Regulation"** means the following statutes and regulations, including any amendments thereto, associated with the control and use of personally identifiable financial, medical or other sensitive information:

1.  Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and Health Information Technology for Economic and Clinical Health Act;

2.  Gramm-Leach-Bliley Act of 1999;

3.  the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

4.  Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

5.  Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce; and

6.  other similar state and federal identity theft and privacy protection legislation that requires commercial entities that collect **Personal Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Personal Information** has potentially been compromised.

U.  **"Privacy Wrongful Act"** means any actual or alleged act, error, omission, neglect or breach of duty by an **Insured** or by a **Service Provider** for services performed for or on behalf of the **Insured** that results in a **Privacy Event**.

V.  **"Professional Services"** means services:

1.  provided by any **Insured** to others as a lawyer, mediator, arbitrator or notary public but solely for services on behalf of the **Named Insured** or Predecessor Firm designated in the Declarations; or

2.  performed by any **Insured** as an administrator, conservator, receiver, executor, guardian, trustee, or in any other fiduciary capacity, but only if the act or omission in dispute is in the rendering of services ordinarily performed as a lawyer and then only to the extent that such services are on behalf of and inure to the benefit of the **Named Insured** or any Predecessor Firm designated in the Declarations.

W.  **"Property Damage"** means:

1.  physical injury to or destruction of any tangible property, including the loss of use thereof; or

2.  loss of use of tangible property which has not been physically injured or destroyed;

X.  **"Retroactive Date"** means the date stated in the Declarations as such.

Y.  **"Service Provider"** means a business the **Insured** does not own, operate, or control, but that the **Insured** hires for a fee pursuant to a written contract to perform services related to the conduct of the **Insured's** business, including but not limited to,

1.  maintaining, managing, or controlling the **Insured's Computer Systems**;

2.  hosting or facilitating the **Insured's** Internet website; or

3.  providing other **Technology Services** to the **Insured**.

Z.  **"Unauthorized Access"** means the gaining of access to the **Insured's Computer System** by an unauthorized person or persons, or by an authorized person or persons in an unauthorized manner.

AA.  **"Unauthorized Use"** means the use of the **Insured's Computer System** by a person unauthorized by the **Insured** or a person authorized by the **Insured** who uses the **Insured's Computer System** for a purpose which is not intended by the **Insured**.

BB.  **"Wrongful Act"** means any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render **Professional Services** by any **Insured** on behalf of the **Named Insured**, including but not limited to **Personal Injury**.

CC.  **"Technology Services"** means any electronic or computer-based network services, including

1.  design, analysis, development, integration, installation, programming, conversion, service, **Network Security,** support, maintenance, repair, sale, or resale of **Computer Systems,** computer networks, electronic systems, computer software, computer hardware, or computer    firmware;

2.  database design and the collection, compilation, processing, warehousing, mining, storage, management, or analysis of electronic data;

3.  information technology consulting, management, education, or training;

4.  **Telecommunications Services;** or

5.  Internet services, including:

    a.  Internet access provision, application service provision, domain name registration, or the provision of search engine, web browser, or electronic mail services;

    b.  website design, programming, hosting, managing, or maintenance;

    c.  e-commerce transaction services, electronic exchange services, auction services, managed and **Network Security** services, web portal services; and

    d.  the development, design, and maintenance of chat rooms, blogs, e-mail services or bulletin boards.

DD.  **"Telecommunications Services"** means local, regional and long distance wire line and wireless dial tone access and switching services, toll free services, voice mail, call forwarding, call waiting and caller 10; ground based satellite communication services; DSL, ISDN and VoIP services; video conferencing services; paging services; basic wire maintenance; 911 emergency services; directory services and operator assistance; analysis, design, integration and conversion of telecommunication systems; directory publishing; or project management or consulting services related to any matter described in this definition.

EE.  **"Retention"** means the Self-Insured Retention identified in the Declarations or the Deductible identified in the Declarations, whichever the Named Insured has opted to purchase, as indicated in the Declarations.

## III.  EXCLUSIONS

This Policy shall not apply to any **Damages** or **Claims Expenses** incurred with respect to any **Claim:**

A.  based upon or arising out of any actual or alleged dishonest, criminal, intentional, malicious or fraudulent act, error or omission or any willful violation of any statute or regulation by an **Insured,** if a final adjudication adverse to such **Insured** establishes such a dishonest, criminal, intentional, malicious or fraudulent act, error or omission or willful violation.

B.  for **Bodily Injury** to, or sickness, disease or death of any person, or to **Property Damage**; however, this Exclusion shall not apply to emotional distress or mental anguish caused (i) by **Professional Services**; or (ii) a **Privacy Event** and Insuring Agreement B is purchased**;**

C.  based upon or arising out of any written demand, litigation, proceeding, administrative action or hearing brought prior to or pending as of the Prior and Pending Litigation Date as stated in the Declarations as well as any future litigation, proceeding, administrative action or hearing based upon any such pending or prior litigation, proceeding, administrative action or hearing or derived from the same or similar essential facts or circumstances underlying or alleged in any such pending or prior litigation, proceeding, administrative action or hearing;

D.  based upon or arising out of any circumstance, if written notice of such circumstance has been given under any policy of which this Policy is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

E.  based upon or arising out of any actual or alleged violation of the Employee Retirement Income Security Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statute or common law;

F.  based upon or arising out of any gaining by the **Insured** of any profit, remuneration or advantage to which such **Insured** was not legally entitled, including the disgorgement of any such profit, remuneration or financial advantage by the **Insured**, if a final adjudication adverse to such **Insured** establishes such conduct;

G.  based upon or arising out of any actual or alleged liability assumed by the **Insured** in any express, implied, actual, constructive, oral or written contract, warranty, guarantee or promise, including liquidated damages or penalties of any nature pursuant to a contract or agreement of any kind, but this exclusion shall not apply to liability of the **Insured** which would exist in the absence of such contract or agreement;

H.  based upon or arising out of any actual or alleged discrimination, humiliation or harassment, including but not limited to a **Claim** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference;

I.  based upon or arising out of any actual or alleged activities of an **Insured** as, or an **Insured** acting in, the capacity as:

   1.  an officer, director, partner, trustee or employee of a pension, welfare, profit sharing, mutual or investment trust or fund, charitable organization, corporation or business enterprise, other than the **Named Insured;**

   2.  a public official, employee, or agent of a governmental body, subdivision, or agency, unless the **Insured** is deemed to be a public official, employee, or agent of such entity solely by virtue of rendering **Professional Services** to it; or

   3.  a fiduciary under the Employee Retirement Income Security Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statute or common law;

J.  based upon or arising out of the **Insured's** actual or alleged intentional failure to disclose the loss of **Personal Information** in violation of any law or regulation. Solely with respect to the applicability of this exclusion under Insuring Agreement B., only facts pertaining to and knowledge possessed by any principal, partner, officer, director or organizational equivalent of an **Insured** shall be imputed to other **Insureds**;

K.  based upon or arising out of any actual or alleged certification or acknowledgment by an **Insured** in the capacity as a notary public of a signature on a document which the **Insured** did not personally witness being placed on the document;

L.  based upon or arising out of the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water, including an aquifer or groundwater;

M.  based upon or arising out of any actual or alleged species of fungi, including mold, mildew and any mycotoxins, mold allergens, spores, scents or byproducts produced or released by fungi;

N.  by any **Insured** under this insurance against another **Insured**;

O.  made against any **Insured** as the beneficiary or distributee of any trust or estate;

## IV.  TERRITORY

This Policy applies to any **Wrongful Act** committed by the **Insured** anywhere in the world, provided that suit is brought or **Claim** is made within the United States, its territories and possessions.

## V.  LIMITS OF LIABILITY

A.  The liability of the **Company** for all **Claim Expenses** and **Damages** for each **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period**, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations for each **Claim.**

B.  The total liability of the **Company** for all **Claim Expenses** and **Damages** for all **Claims** first made against the **Insured** and reported to the **Company** during the **Policy Period**, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations as **Policy Period Aggregate**.

C. The Limit of Liability for **Claims** first made and reported during the Automatic Extended Reporting Period or the Optional Extended Reporting Period shall be part of, and not in addition to the Limit of Liability as stated in the Declarations and as stated above.  If any **Insured** has purchased or does purchase other insurance covering **Claims** first made and reported during the Automatic Extended Reporting Period or the Optional Extended Reporting Period, the coverage provided under this Policy for such **Claims** shall apply in excess of such insurance.

D. The amount shown as Each Claim under Retention shall be applicable to all **Claim Expenses** and **Damages** for each and every **Claim** and shall remain the responsibility of the **Insured** subject to the amount shown as Policy Period Aggregate under Retention on the Declarations.  A single Each Claim **Retention** shall apply to **Claims**  arising from the same or related **Wrongful Acts.**

If Deductible is shown as Type on the Declarations, the  **Insured** will pay to the **Company**  all **Claim Expenses** and **Damages**  up to the Each Claim amount or Policy Period Aggregate amount, as applicable.  Such amount shall be paid by the **Insured** within thirty (30) days of written demand by the **Company**.  The Each Claim and Policy Period Aggregate Limits of Insurance shall be reduced by the amount of such deductibles incurred and such deductibles are a part of, and not in addition to, the Limits of Insurance.

If Self-Insured Retention is shown as Type on the Declarations, the **Insured** will pay all **Claim Expenses** and **Damages**  up to the Each Claim amount or Policy Period Aggregate amount, as applicable, as a condition precedent to payment of any **Claim Expenses** or **Damages** by the **Company** hereunder. The Each Claim and Policy Period Aggregate shown under Retention for Self-Insured Retention on the Declarations are in addition to the Each Claim and Policy Period Aggregates Limits of Insurance, respectively.

E. **Multiple Insureds, Claims and Claimants.**  The inclusion herein of more than one **Insured**  shall not operate to increase the **Company's** Limit of Liability.  **Claims** alleging, based upon, arising out of or attributable to the same **Wrongful Act(s)** or **Interrelated Wrongful Acts** shall be treated as a single **Claim** regardless of whether made against one or more than one **Insured**.  All such **Claims**, whenever made, shall be considered first made during the **Policy Period**, the Automatic Extended Reporting Period, or Optional Extended Reporting Period, if purchased, in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Interrelated Wrongful Acts** was first made, and all such **Claims** shall be subject to the Limit of Liability and Retention set forth in such Policy.

F. Subject to all limits of liability described in A., B., C., and E., above, the total liability of the **Company** under any policy or policies not specifically issued as an excess policy for each **Claim** to which this Policy applies shall not exceed the amount stated in the Declarations under Maximum Limit as each **Claim** regardless as to the number or type(s) of coverages or policies, whether issued by the **Company** or any of its affiliates, that apply.

Subject to all limits of liability described in A., B., C., and E., above, the total liability of the **Company** under any policy or policies not specifically issued as an excess policy for all **Claims** to which this Policy applies shall not exceed the amount stated in the Declarations under Maximum Limit as Policy Period Aggregate regardless as to the number or type(s) of coverages or policies, whether issued by the **Company** or any of its affiliates, that apply.

## VI. DUTIES IN THE EVENT OF A CLAIM

A. **Notice of Claims.**  As a condition precedent to coverage under this Policy, the **Insured** shall provide the **Company** written notice of any **Claim** made against any **Insured** as soon as practicable, but in no event later than: (i) the expiration date of this Policy; (ii) the expiration of the Automatic Extended Reporting Period; or (iii) the expiration of the Optional Extended Reporting Period, if purchased.

In the event a **Claim** is brought against any **Insured**, the **Insured** shall forward to the **Company** every demand, notice, summons, complaint or other process or any threat of an intention to hold the **Insured**

responsible for any **Wrongful Act** received directly by the **Insured** or by the **Insured's** representatives. Written notice of any **Claim** against any **Insured**, as well as each demand on or suit against the **Insured**, shall be delivered to the **Company** as follows:

1. **By Mail:**                    AmTrust North America
                                   P.O. Box 650767
                                   Dallas, TX 75265-0767

2. **By Fax:**                     (877) 669-9140

3. **By Electronic Mail:**     professionalclaims@amtrustes.com

B. **Assistance and Cooperation of the Insured.**   The **Insured** shall cooperate with the **Company** and upon the **Company's** request shall (i) provide to the **Company** copies of documents and such other things held by or available to the **Insured** which relate to any **Claim** or to the **Wrongful Act**, transactions or other events which shall have given rise to such **Claim**, (ii) submit to examination and interview by a representative of the **Company**, under oath if required, (iii) attend hearings, depositions and trials, and (iv) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and other proceedings, as well as in the giving of a written statement or statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense.

The **Insured** shall further cooperate with the **Company** and do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment which any **Insured** may have.  The **Insured** shall exercise the right to either reject or demand the arbitration of any **Claim** made against the **Insured** in accordance with the written instructions of the **Company**.   The **Insured** shall not, except at the **Insured's** own cost, make any payment, admit any liability, settle any **Claims**, or assume any obligation, provided, however, if this Policy is subject to a Self-Insured Retention, the **Insured** shall have the right to make any settlement of any **Claim** covered by the terms of this Policy subject to the condition that the aggregate amount of such settlement and of the **Claim Expenses** incurred in connection with such **Claim** shall not exceed the Self-Insured Retention identified in the Declarations.

**VII. NOTICE OF CIRCUMSTANCE/CLAIMS MADE EXTENSION**

If during the **Policy Period** any **Insured** first becomes aware or has reasonable grounds to suspect that an **Insured** has committed or may have committed a specific **Wrongful Act** for which coverage is otherwise provided hereunder, and provided the **Insured** during the **Policy Period** gives notice to the **Company** of:

A. the specific **Wrongful Act**;

B. the injury or damage which has resulted or may result from such **Wrongful Act**; and

C. the circumstances by which the **Insured** first became aware of or suspected such  **Wrongful Act**;

then any **Claim** that may subsequently be made against any **Insured** arising out of such **Wrongful Act** shall be deemed for the purposes of this insurance to have been made during the **Policy Period**.

**VIII. EXTENDED REPORTING PERIODS**

A. **Automatic Extended Reporting Period.**  If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Company** shall provide the **Named Insured** an automatic and noncancellable extension of this Policy, subject otherwise to its terms, Limits of Liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** during the ninety (90) days immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise

covered by this insurance.  This Automatic Extended Reporting Period shall terminate after ninety (90) days from the effective date of such nonrenewal or cancellation.

B.  **Optional Extended Reporting Period.**  If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Named Insured**, upon payment of an additional premium as set forth herein, shall have the option to extend this Policy, subject otherwise to its terms, Limit of Liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** during the Optional Extended Reporting Period as purchased immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise covered by this insurance.  The extension, if purchased, shall be endorsed hereto and shall be referred to as the "Optional Extended Reporting Period."  The premium and the extension period for the Optional Extended Reporting Period, if purchased, shall be determined by the **Company** to be agreed to by the **Insured**.

C.  The **Named Insured's** option to elect the Optional Extended Reporting Period must be exercised by notice in writing to the **Company** not later than thirty (30) days after the effective date of the nonrenewal or cancellation of this Policy.  If the premium for the Optional Extended Reporting Period is not paid within thirty (30) days of the effective date of the nonrenewal or cancellation of this Policy, the option to elect the Optional Extended Reported Period shall be void.

D.  At the commencement of the Optional Extended Reporting Period, the entire premium shall be deemed fully earned, and in the event the **Named Insured** terminates the Optional Extended Reporting Period for any reason, the **Company** shall not be liable to return to the **Named Insured** any portion of the premium for the Optional Extended Reporting Period.

E.  Unless expressly waived by the **Company**, As a condition precedent to the **Named Insured's** option to elect the Optional Extended Reporting Period, any and all premiums and **Retentions** that are due must have been paid and the **Named Insured** must have complied with all other terms and conditions of this Policy.  If such conditions precedent are not satisfied or if the notice required under this Section VII. C. is not timely given to the **Company**, the **Named Insured** shall not at a later date be able to exercise such option.

F.  If this Policy is cancelled or nonrenewed due to the nonpayment of premium, the Automatic Extended Reporting Period or Optional Extended Reporting Period shall not be available to any **Insured**.  The Automatic Extended Reporting Period or Optional Extended Reporting Period shall not be available to any **Insured**: (i) whose fraud causes this Policy to be cancelled or nonrenewed, or (ii) whose license, right to practice, or right to conduct business has been revoked, suspended by, or surrendered at the request of, any regulating authority.

G.  The fact that the period during which **Claims** must first be made against the **Insured** and reported to the **Company** under this Policy is extended by virtue of any Automatic Extended Reporting Period or Optional Extended Reporting Period shall not in any way increase the Limits of Liability of this Policy.

H.  The first ninety (90) days of the Optional Extended Reporting Period, if purchased, shall run concurrently with the Automatic Extended Reporting Period.

I.  **Nonpracticing Reporting Period.** If any **Insured** (except any part time, per diem, of counsel, or independent contract attorney) shall permanently retire or otherwise cease the private practice of law during the **Policy Period,** then such **Insured**, upon payment of an additional premium, which shall be determined by the **Company** and agreed to by the **Insured**, shall have the option to extend the insurance afforded by this Policy subject otherwise to its terms, limit of liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** and reported to the **Company** during such Nonpracticing Extended Reporting, as elected by such **Insured,** immediately following the date of the expiration of this Policy or the effective date of this Policy's cancellation, if sooner, hereinafter referred to as the "Nonpracticing Reporting Period." Coverage for the Nonpracticing Reporting Period shall only apply to a **Wrongful Act** committed or alleged to have been committed by the **Insured** in rendering or failing to

render **Professional Services** before the **Insured**'s date of retirement or cessation of the private practice of law and which is otherwise covered by this Policy and, provided further that there is no other insurance in effect on or after the **Insured**'s date of retirement or cessation of the practice of law which covers the **Insured** for such liability or **Claim** and the **Insured** has not engaged in the practice of law since retirement or when he or she otherwise ceased the practice during the **Policy Period.** Any such other insurance shall render coverage for the Nonpracticing Reporting Period inapplicable and of no force or effect, even if the limits of liability of such other insurance may be inadequate to pay all losses and **Claim Expenses** and/or the deductible amount and deductible provisions of such other insurance may be different from those of this Policy.

The extension of coverage for the Nonpracticing Reporting Period shall be endorsed to this Policy, if elected.

As a condition precedent to any **Insured** electing the Nonpracticing Reporting Period, the full annual premium of this Policy and any Retentions that are due must have been paid and all other terms and conditions of this Policy must have been fully complied with. The Nonpracticing Reporting Period shall not be available when any **Insured**'s license or right to practice his or her profession is revoked, suspended by or surrendered at the request of any regulatory or judicial authority.

The **Insured**'s right to elect the Nonpracticing Reporting Period must be exercised by written notice not later than sixty (60) days after the expiration date of this Policy or the effective date of this Policy's cancellation, if sooner. Such notice must indicate the total extension period desired and must include full payment of premium, if any, for such Nonpracticing Reporting Period.

## IX. GENERAL CONDITIONS

A. **Subrogation.** In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery therefore against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights and the **Insured** shall do nothing to prejudice such rights. Any amount recovered upon the exercise of such rights of subrogation shall be applied as follows: first, to the repayment of expenses incurred toward subrogation; second, to **Damages** and/or **Claim Expenses** paid by the **Insured** in excess of the Limits of Liability hereunder; third, to **Damages** and/or **Claim Expenses** paid by the **Company**; fourth, to **Damages** and **Claim Expenses** paid by the **Insured** in excess of the retention; and last, to repayment of the retention.

B. **Action Against the Company.** No action shall lie against the **Company** unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this Policy, nor until the amount of the obligation of the **Insured** to pay shall have been fully and finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**. In the event any person or organization or the legal representative thereof has secured a judgment against an **Insured** and such judgment remains unsatisfied after the expiration of thirty (30) days from the service of notice of entry of the judgment upon the attorney for the **Insured**, or upon the **Insured**, and upon the **Company**, then an action may, except during a stay or limited stay of execution against the **Insured** on such judgment, be maintained against the **Company** under this Policy for the amount of such judgment to the extent of the insurance afforded by this Policy. Nothing contained in this Policy shall give any person or organization the right to join the **Company** as a party in any action against any insured to determine the **Insured's** liability. Bankruptcy or insolvency of any **Insured** or of the **Insured's** estate shall not relieve the **Company** of any of its obligations hereunder.

C. **Application.** In issuing this Policy, the **Company** has relied upon the statements, representations and information contained in the **Application**. Every **Insured** acknowledges and agrees that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the **Company** to issue this Policy, and (iii) are material to the **Company's** acceptance of the risk

to which this Policy applies.  If any of the statements, representations or information in the **Application** are not true and accurate, there shall be no coverage for any **Claim** under this Policy with respect to any **Insured Person** who knew, as of the effective date of the **Policy Period**, of such information that was not truthfully and accurately disclosed in the **Application.**  The knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** for the purposes of determining coverage.

D.   **False or Fraudulent Claims**.  If any **Insured** shall commit fraud in proffering any **Claim,** whether as to the amount of the **Claim** or otherwise, this insurance shall be void as to such **Insured** from the date such fraudulent **Claim** is proffered.

E.   **Other Insurance.**  This insurance shall be excess over any other valid and collectable insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Policy.

F.   **Changes.**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Company** shall not affect a waiver or a change in any part of this Policy or estop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by written endorsement issued to form a part of this Policy.

G.   **Assignment.**  Assignment of interest under this Policy shall not bind the **Company** unless its consent is endorsed in writing hereon.

H.   **Cancellation.**  This Policy may be canceled by the **Named Insured** by mailing or delivering prior written notice to the **Company** or by surrender of this Policy to the **Company**.  If this Policy is canceled by the **Named Insured**, the **Company** shall retain the greater of the customary short rate proportion of the premium hereon or the Earned Minimum Premium set forth in the Declarations.  This Policy may also be canceled by or on behalf of the **Company** by delivering to the **Named Insured** by registered, certified or other first class mail, or by electronic means, written notice stating when not less than ninety (90) days after the date of such notice the cancellation shall be effective.  The proof of delivery of such notice shall be sufficient proof of notice.  If this Policy is canceled by or on behalf of the **Company**, the **Company** shall retain the pro rata proportion of the premium hereon.  The **Company** may cancel this Policy on ten (10) days notice for nonpayment of premium due.

I.   **Conformity to Statute.**  Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy are hereby amended to conform to such laws.

J.   **Singular Form of a Word.**  Whenever the singular form of a defined word is used herein, the same shall include the plural when required by context.

K.   **Named Insured Authorization.**  By acceptance of this Policy, the **Named Insured** agrees to act on behalf of every **Insured** with respect to the payment or return of premium, the receipt and acceptance of any endorsements, the cancellation of the Policy, the negotiation of renewal, and the giving and receiving of any notice provided for by the terms and conditions of this Policy.

L.   **Mergers and Acquisitions.**

1.   If, during the **Policy Period**, the **Named Insured** acquires a majority of the assets of another entity, creates another entity, or acquires any entity by merger into or consolidation with the **Named Insured**, such entity shall not be covered under this Policy unless the **Insured**, prior to such acquisition or creation:

a.   gives written notice of such acquisition or creation to the **Company**;

b.   pays any additional premium required by the **Company**; and

c.   agrees to any additional terms and conditions of this Policy as required by the **Company**.

2. If, during the **Policy Period**, any of the following events occur:

    a. the acquisition of the **Named Insured**, or all of or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

    b. the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the partners, principals, or directors of the **Named Insured**,

then, coverage under this Policy will continue in full force and effect until the termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** taking place before such event.  Coverage under this Policy will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

M. **Bankruptcy.**  The bankruptcy or insolvency of the **Insured s**hall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this Policy.

POLICY NUMBER: AES1045271 01

# POLICYHOLDER'S GUIDE TO REPORTING A PROFESSIONAL LIABILITY CLAIM

A.  As soon as you are aware of an event that will give rise to a claim being made against you, please be sure to immediately report the matter to AmTrust North America.  Be sure to include your policy number and the name of the insured as it is stated on the policy.

B.  New claims may be reported 24/7 to **AmTrust North America** as follows:

   1. **By Mail:**            AmTrust North America
                              P.O. Box 650767
                              Dallas, TX 75265-0767

   2. **By Fax:**             (877) 669-9140

   3. **By Electronic Mail:** professionalclaims@amtrustes.com

   4. **By Telephone:**       (866) 272-9767

C.  **AmTrust North America** Claim Office may be reached as follows:

   1. **By Mail:**            AmTrust North America
                              135 S. LaSalle St. Suite 1925
                              Chicago, IL. 60603

   2. **By Telephone:**       Jay Fenton       312-803-6083
                              Paul Poppish     312-803-4630

   3. **By Fax:**             312-781-0423

This page intentionally left blank

POLICY NUMBER: AES1045271 01

**PROFESSIONAL LIABILITY**
**AES PL 017 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL TERRORISM EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this Policy does not apply to any **Claim** based upon, arising out of, or involving in any way "an act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER:  AES1045271 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that:

I.   This Policy does not apply:

A.   Under any coverage part, to **Bodily Injury** or **Property Damage**

1.   with respect to which an **Insured** under this Policy is also an insured under a nuclear liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

2.   resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   Under any Medical Payments Coverage, or any Supplementary Payments Provision relating to first aid, to expenses incurred with respect to **Bodily Injury** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

C.   Under any Liability Coverage, to **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if

1.   the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

2.   the nuclear material is contained in spent fuel or waste at any time possessed, handled, use, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

3.   the **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of **Professional Services**, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to property damage to such nuclear facility and any property threat

II.   As used in this endorsement:

"hazardous properties"  include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or by-product material;

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof,

"spent fuel"  means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste"  means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under Paragraph (a) or (b) thereof,

"nuclear facility" means:

1.  any nuclear reactor,

2.  any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packaging waste,

3.  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor"  means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**"Property Damage"** is amended to include all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.

POLICY NUMBER:  AES1045271 01

**PROFESSIONAL LIABILITY**
**AES PL 048 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# 50/50 CONSENT TO SETTLE CLAUSE
# FOR LAWYERS

In consideration of the premium charged, it is hereby understood and agreed that Section I.D. of this Policy shall be amended to read as follows:

**Section I.      INSURING AGREEMENTS**

**D.   Consent to Settle.** The **Company** shall have the right to make any investigation it deems necessary and, with the written consent of the **Insured**, make any settlement of a **Claim** covered by this Policy. If the **Company** recommends settlement or compromise of a **Claim**, and the **Insured** refuses to give written consent to settlement as recommended by the **Company**, then the **Insured** thereafter shall negotiate or defend such **Claim** independently of the **Company** and on the **Insured's** own behalf. In such event, the **Insured** shall be solely responsible for fifty percent (50%) of all **Claim Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to settlement as recommended by the **Company**, and the **Insured** shall also be responsible for fifty percent (50%) of all **Damages** in excess of the amount for which settlement could have been made as recommended by the **Company**; provided that the **Company's** liability under this Policy for such **Claim** shall not exceed the remaining portion of the applicable Limits of Liability.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 01

**PROFESSIONAL LIABILITY**
**AES PL 050 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM RETAINED PREMIUM

It is hereby understood and agreed that paragraph IX.H. is deleted in its entirety and replace with the following:

**Section IX.  GENERAL CONDITIONS**

**H.  Cancellation.**  This Policy may be canceled by the **Named Insured** by mailing or delivering prior written notice to the **Company** or by surrender of this Policy to the **Company**.  If this Policy is canceled by the **Named Insured**, the **Company** shall retain the greater of the customary short rate proportion of the premium hereon or $5,056_____.  This Policy may also be canceled by or on behalf of the **Company** by delivering to the **Named Insured** by registered, certified or other first class mail, or by electronic means, written notice stating when not less than ninety (90) days after the date of such notice the cancellation shall be effective.  The proof of delivery of such notice shall be sufficient proof of notice.  If this Policy is canceled by or on behalf of the **Company**, the **Company** shall retain the pro rata proportion of the premium hereon.  The **Company** may cancel this Policy on ten (10) days notice for nonpayment of premium due.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 01

**PROFESSIONAL LIABILITY**
**AES PL 088 01 14**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OPTIONAL EXTENDED REPORTING PERIOD AMENDMENT

In consideration of the premium charged, it is hereby understood and agreed that Section VIII. B. of this Policy shall be deleted in its entirety and replaced with the following:

**SECTION VIII.   EXTENDED REPORTING PERIODS**

B.   **Optional Extended Reporting Period**. If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Named Insured**, upon payment of an additional premium as set forth herein, shall have the option to extend this Policy, subject otherwise to its terms, Limits of Liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** during the 12, 24, 36, 48, or 60 months as purchased immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise covered by this insurance. The extension, if purchased, shall be referred to as the "Optional Extended Reporting Period." The premium for the Optional Extended Reporting Period, if purchased, shall be 12 months at 100%, 24 months at 150% ,36 months at 175% , 48 months at 200%, or 60 months at 250% of the full annual premium for this Policy, plus any additional premium owed for this Policy

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER : AES1045271 01

**PROFESSIONAL LIABILITY
AES PL 091 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPLIT RETROACTIVE DATE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that:

The liability of the **Company** for all **Claims Expenses** and **Damages** for each **Claim** made against the **Insured** for a **Wrongful Act** and the **Retroactive Date** of the Declarations is revised as follows:

First **Retroactive Date**          :          **12/28/2010**

        Program Structure          :          **SELF INSURED RETENTION / DEDUCTIBLE**
                                                $ **10,000**  Each Claim
                                              $ **N/A**      Aggregate

        Limits of Liability          :          $ **100,000**  Each Claim
                                                $ **300,000**  Aggregate

Second **Retroactive Date**          :          **03/06/2017**

        Program Structure          :          **SELF INSURED RETENTION / DEDUCTIBLE**
                                                $ **10,000**  Each Claim
                                              $ **N/A**      Aggregate

        Limits of Liability          :          $  **500,000**    Each Claim
                                                $ **1,000,000**  Aggregate

This endorsement has no impact, and shall not increase, the Policy Period Aggregate as state in the Limits of Insurance and Maximum Limit sections of the Declarations.

All other terms and conditions of this Policy remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 01

**PROFESSIONAL LIABILITY**
**AES PL 103 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE EXTENSION – CRISIS MANAGEMENT

In consideration of the premium charged, it is hereby understood and agreed that the **Company** shall provide a $ 10,000_____ sublimit for **Crisis Management Expenses** the **Insured** incurs resulting directly from any **Claim** covered under this policy.  The sublimit shall be part of and not in addition to the Limit of Liability set forth in the Declarations Page.

It is further understood and agreed that the following definition shall be added to **Section II** of this Policy:

**Section II.     DEFINITIONS**

**"Crisis Management Expenses"** means the reasonable and necessary costs of retaining for a stipulated period of time with the prior approval of the **Company**, an independent public relations consultant and the cost of associated advertising and public relations media and activities.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 01

**PROFESSIONAL LIABILITY**
**AES PL 111 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SELF INSURED RETENTION AMENDMENT
# FOR ARBITRATION OR MEDIATION

In consideration of the premium charged, it is hereby understood and agreed that the following shall be added to Section V.D. of this Policy:

If the **Company** and the **Insured** agree to use arbitration or mediation to resolve a **Claim**, and the **Company** and the **Insured** subsequently resolve the **Claim** by arbitration or mediation, then the self-insured retention obligation of the **Insured** for such **Claim** shall be reduced by fifty percent (50%) to a maximum reduction of $25,000.

All other terms and conditions remain unchanged.

This page intentionally left blank

# Privacy Policy
## Associated Industries Insurance Company, Inc.

We value your business and trust in us and respect the privacy and confidentiality of your nonpublic personal information.

## Our Practices Regarding Privacy and Confidentiality

We are committed to keeping your information secure and confidential, regardless of whether information is received by mail, telephone, Internet or in person.

The nonpublic personal information about you that is collected is utilized only to the extent necessary to effect, deliver, administer or enforce insurance service to you and is disclosed only as permitted by law.  We may also disclose certain information to nonaffiliated third parties.

If you prefer that we not disclose nonpublic personal information about you to third parties, you may opt out of those disclosures, that is, you may direct us not to make those disclosures by contacting us at the address and phone number listed below.

Likewise, to the extent we utilize other organizations, such as general agents and third party administrators, to support our business; we require them to abide by the requirements of the applicable privacy laws and by our privacy policy.

## Information We Collect

We gather information about you in connection with providing our products and services to you and to support our business operations.  This includes information you may provide to us, such as from your insurance application, and information about you from another source, such as a credit bureau.

## Information We May Disclose To Affiliates or Third Parties

Except as noted herein, we do not disclose nonpublic personal information unless authorized by you.  We may, without authorization but only as permitted or required by law, provide nonpublic personal information about you to persons or organizations both inside and outside of Associated Industries Insurance Company, Inc. in order to fulfill a transaction requested, service policies, investigate and/or handle claims, detect and/or prevent fraud, participate in insurance support organizations, or comply with lawful requests from regulatory or law enforcement authorities or a court of law. These include, for example: affiliated companies, claims adjusters or administrators, insurance agents or brokers, medical providers, program managers, consumer reporting agencies, governmental agencies, auditors, lienholders, mortgagees, and assignees.

## Information Confidentiality and Security

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## Access to Your Information

You have the right to know what kind of information we keep in our files about you, to have the reasonable access to it and receive a copy. Contact us at the address noted below should you have questions about what information we may have on file.  All written requests must include your name, address, telephone number, and a photocopy of a picture ID for identification purposes.  We are dedicated to maintaining accurate customer records and shall strive to correct any inaccurate information noted in a timely manner.

**Associated Industries Insurance Company, Inc.**
Associated Industries Insurance Company, Inc.
P.O. Box 318004
Cleveland, OH 44131-0880
Attention:  Privacy Manager

AES PN 08 11

This page intentionally left blank

# COMMERCIAL LINES POLICY

## Associated Industries Insurance Company, Inc.

Associated Industries Insurance Company, Inc.

P.O. Box 318004
Cleveland, OH 44131-0880

THIS POLICY CONSISTS OF:

– DECLARATIONS
– COMMON POLICY CONDITIONS
– COVERAGE FORMS
   APPLICABLE ENDORSEMENTS

AES JACKET 08 11



EXHIBIT B

Associated Industries Insurance Company, Inc.

In Witness Whereof, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

President

Elissa Pacheco

AES JACKET 08 11

Associated Industries Insurance Company, Inc.    Policy Number: AES1045271 03
Administered through:

AmTrust E&S Insurance Services    Named Insured: Vela Wood, PC
160 Federal Street, 3rd Floor
Boston, MA 02110

## LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY DECLARATIONS

| Renewal of: | AES1045271 | Policy Period: | From | 3/6/2018 | To | 3/6/2019 |
|---|---|---|---|---|---|---|

| Retroactive Date: | 12/28/2010 | Prior and Pending Litigation Date: | 3/6/2017 |
|---|---|---|---|

| Named Insured and Address | Broker Name and Address |
|---|---|
| Vela Wood, PC | Shelby Crowson |
| 5307 E. Mockingbird Lane, Suite 802 | 12404 Park Central, Suite 380 |
| Dallas , TX 75202 | Dallas, TX 75251 |

Professional Services Covered by this Policy:    Per Policy Form

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| | | | |
|---|---|---|---|
| **LIMITS OF INSURANCE** | | | |
| Each Claim | | $ | 1,000,000 |
| Policy Period Aggregate | | $ | 2,000,000 |
| **DISCIPLINARY PROCEEDING COVERAGE** | | | |
| Each Disciplinary Hearing | | $ | 25,000 |
| Policy Period Aggregate | | $ | 100,000 |
| **NETWORK SECURITY AND PRIVACY COVERAGE** | | | |
| Each Claim | | $ | 100,000 |
| Policy Period Aggregate | | $ | 100,000 |
| **RETENTION** | | **SELF-INSURED RETENTION** | |
| Each Claim | | $ | 10,000 |
| Policy Period Aggregate | | $ | None |
| **MAXIMUM LIMIT** | | | |
| Each Claim | | $ | 1,000,000 |
| Policy Period Aggregate | | $ | 2,000,000 |

**TOTAL PREMIUM FOR THIS COVERAGE    $    28,225.00**

Earned Minimum Premium shall be 25 percent of the Total Premium

| Forms and Endorsements Applicable |
|---|
| See Forms and Endorsements Schedule |

**THIS IS A CLAIMS MADE AND REPORTED POLICY, EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. PLEASE READ THE POLICY CAREFULLY.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EPXENSES, UNLESS THE POLICY IS OTHERWISE ENDORSED. AMOUNTS INCURRED FOR CLAIM EXPENSES AND DAMAGES SHALL ALSO BE APLIED AGAINST THE SELF-INSURED RETENTION, UNLESS THE POLICY IS OTHERWISE ENDORSED.**

**TERMS THAT APPEAR IN BOLD TYPE, OTHER THAN THE CAPTION TITLES, HAVE SPECIAL MEANING. PLEASE REFER TO SECTION II. DEFINITIONS.**

These Declarations, the completed and signed **Application**, and this policy with endorsements shall constitute the full and complete contract between the Insured and the Company as of the effective date unless and until otherwise endorsed.

Issued Date:    3/13/2018

AESDEC PL 120 0114



**12404 Park Central Drive, Suite 380**
**Dallas, TX  75251**
**Ph: 214-865-7200**
**www.rtspecialty.com**

17300020

This Face Page attaches to and becomes a part of the following policy:

Insured: Vela Wood, PC
Policy #: AES1045271
Effective Date: 3/6/2018
Date Policy/Endorsement Received: 3/13/2018
Zip Code of Risk Location: 75206

THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT
INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS SURPLUS LINE
COVERAGE UNDER THE TEXAS INSURANCE STATUTES. THE TEXAS DEPARTMENT OF
INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE
SURPLUS LINES INSURER PROVIDING THIS COVERAGE, AND THE INSURER IS NOT A
MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCATION
CREATED UNDER CHAPTER 462, INSURANCE CODE. CHAPTER 225, INSURANCE CODE,
REQUIRES PAYMENT OF A 4.85 PERCENT TAX ON GROSS PREMIUM.
Rev. 4/1/09

Name and Address of Insurer:
Associated Industries Insurance Co, Inc

Name and Address of Surplus Lines Agent:
R-T Specialty, LLC
180 N. Stetson Avenue, Suite 4600
Chicago, IL 60601

| | |
|---|---|
| Premium: | $28,000.00 |
| TRIA Premium: | NOT APPLICABLE |
| Fees: | Brokerage Fee   $250.00<br>Policy Fee - Carrier       $225.00 |
| Surplus Lines Tax: | $1,381.04 |
| Stamping Fee: | $42.71 |
| Total: | $29,898.75 |

# RT

RYAN [SM]
TURNER
SPECIALTY

**12404 Park Central Drive, Suite 380**
**Dallas, TX  75251**
**Ph: 214-865-7200**
**www.rtspecialty.com**

17300020

| | |
|---|---|
| **IMPORTANT NOTICE** | **AVISO IMPORTANTE** |
| To obtain information or make a complaint: | Para obtener informacion o para someter una queja: |
| You may contact your (title) at (telephone number). | Puede comunicarse con su (title) al (telephone number). |
| You may call Associated Industries Insurance Co, Inc's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al numero de telefono gratis de Associated Industries Insurance Co, Inc's para informacion o para someter una queja al: |
| **1-XXX-XXX-XXXX** | **1-XXX-XXX-XXXX** |
| You may also write to Associated Industries Insurance Co, Inc at: | Usted tambien puede escribir a Associated Industries Insurance Co, Inc |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al: |
| **1-800-252-3439** | **1-800-252-3439** |
| You may write the Texas Department of Insurance: | Puede escribir al Departamento de Seguros de Texas: |
| P. O. Box 149104<br>Austin, TX 78714-9104<br>Fax: (512) 490-1007<br>Web: http://www.tdi.texas.gov<br>E-mail: ConsumerProtection@tdi.state.tx.us |  P. O. Box 149104<br>Austin, TX 78714-9104<br>Fax: (512) 490-1007<br>Web: http://www.tdi.texas.gov<br>E-mail: ConsumerProtection@tdi.state.tx.us |
| **PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the (agent) (company) (agent or the company) first.  If the dispute is not resolved, you may contact the Texas Department of Insurance. | **DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el (agente) (la compania) (agente o la compania) primero.  Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI). |



**12404 Park Central Drive, Suite 380**
**Dallas, TX  75251**
**Ph: 214-865-7200**
**www.rtspecialty.com**

17300020

| **ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document. | **UNA ESTE AVISO A SU POLIZA**: Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto. |
|---|---|

This page intentionally left blank

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1045271 03

**Named Insured:**
Vela Wood, PC

## COMMON POLICY DECLARATIONS

| **Policy Number** | AES1045271 03 | | **Policy Period:** | **From** | 3/6/2018 | **To** | 3/6/2019 |
|---|---|---|---|---|---|---|---|

12:01 a.m. Standard Time at the Named Insured's Address

| **Transaction** | Renewal |
|---|---|

| **Named Insured and Address** | **Broker** |
|---|---|
| Vela Wood, PC | R-T Specialty, LLC |
| 5307 E. Mockingbird Lane, Suite 802 | 12404 Park Central Drive, #380 |
| Dallas  TX 75202 | Dallas TX 75231 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| Lawyers | Individual | |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.  This policy consists of the following coverage parts for which a premium is indicated.  This premium may be subject to adjustment.

| **COVERAGE PART DESCRIPTION** | **PREMIUM** |
|---|---|

| | | |
|---|---|---|
| **POLICY PREMIUM** | $ | 28,000.00 |
| **DEPOSIT PREMIUM** | $ | 28,000.00 |
| **POLICY FEE** | $ | 225.00 |
| **TOTAL DEPOSIT PREMIUM** | $ | 28,225.00 |

| **Minimum Retained Audit Premium** | $ 7,056.25 | **Minimum Retained Premium** | $ 7,056.25 |
|---|---|---|---|

| **Forms applicable to all Coverage Parts:** | See Forms and Endorsements schedule |
|---|---|

Countersigned this                    By _____

Authorized Representative

Issued Date:        3/13/2018

INSURED COPY

CPPMDEC 0411

This page intentionally left blank

Associated Industries Insurance Company, Inc.
Administered through: AmTrust E & S Insurance Services, Inc.
160 Federal Street, 3rd Floor
Boston, MA 02109

**Policy Number:**
AES1045271 03
**Named Insured:**
Vela Wood, PC

## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form | Ed. Date | Description |
|---|---|---|---|
| PROF | AESPL005 | (01/14) | LAWYERS' PROFESSIONAL LIABILITY INSURANCE POLICY |
| PROF | AESPL014 | (01/14) | POLICYHOLDERS GUIDE TO REPORTING A PROFESSIONAL LIABILITY CLAIM |
| PROF | AESPL017 | (01/14) | TOTAL TERRORISM EXCLUSION |
| PROF | AESPL031 | (01/14) | NUCLEAR ENERGY LIABILITY EXCLUSION |
| PROF | AESPL048 | (01/14) | 50/50 CONSENT TO SETTLE CLAUSE FOR LAWYERS |
| PROF | AESPL050 | (01/14) | MINIMUM RETAINED PREMIUM ENDORSEMENT |
| PROF | AESPL088 | (01/14) | OPTIONAL EXTENDED REPORTING PERIOD AMENDMENT |
| PROF | AESPL091 | (01/14) | SPLIT RETRO DATE ENDORSEMENT |
| PROF | AESPL103 | (01/14) | COVERAGE EXTENSION – CRISIS MANAGEMENT |
| PROF | AESPL111 | (01/14) | SELF INSURED RETENTION AMENDMENT FOR ARBITRATION OR MEDIATION |
| PROF | AESPN | (08/11) | ASSOCIATED INDUSTRIES INSURANCE COMPANY PRIVACY POLICY |

Issued Date: 3/13/2018

CPPMFORMSCHED

This page intentionally left blank

# Service of Suit

Service of process for any suit instituted against the Company concerning this Policy may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the statute or his/her successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder and arising out of this Policy.

The Company hereby designates:

> Corporation Service Company
> d/b/a CSC-Lawyers Incorporating Service Company
> 211 E. 7th Street, Suite 620
> Austin, TX 78701-3218

as the person(s)/organization to whom the Superintendent, Commissioner, or Director of Insurance or other specified person is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this Policy                                                                        arises.

This page intentionally left blank

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

This page intentionally left blank



# LAWYERS' PROFESSIONAL LIABILITY
# INSURANCE POLICY

### THIS IS A CLAIMS MADE AND REPORTED POLICY

**THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY IN ACCORDANCE WITH THE TERMS OF THIS POLICY. CLAIM EXPENSES REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.**

In consideration of the payment of the premium, and the undertaking of the **Insured** to pay the Retention herein, and in reliance upon all statements made and information contained in the **Application**, which is attached hereto and made a part hereof, and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the **Company** and the **Insured** agree as follows:

## I.   INSURING AGREEMENTS

A.   The **Company** shall pay **Damages** and **Claim Expenses,** in excess of the Self-Insured Retention identified in the Declarations, if applicable, and subject to the Policy's Limit of Liability, that the **Insured** shall become legally obligated to pay as a result of a **Claim** made against the **Insured** for a **Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**.

B.   If Each Claim and Policy Period Aggregate limits have been purchased for Network Security and Privacy coverage as designated in the Declarations, the **Company** shall pay **Damages** and **Claims Expenses** resulting from any **Claim** first made against the **Insured** for a **Network Security Wrongful Act** or **Privacy Wrongful Act**, provided that (i) the **Claim** is first made against the **Insured** and reported to the Company, in writing, during the **Policy Period** or the Extended Reporting Period, if applicable; (ii) the **Insured** has no knowledge of such **Network Security Wrongful Act** or **Privacy Wrongful Act** prior to the Inception Date of this Policy; and (iii) such **Network Security Wrongful Act** or **Privacy Wrongful Act** took place on or after the **Retroactive Date** set forth in the Declarations Page of this Policy and prior to the end of the **Policy Period**.

C.   **Defense.**  As part of and subject to the Policy's Limit of Liability, the **Company** shall have the right and duty to defend any **Claim** against the **Insured** to which this Policy applies, even if the allegations of the **Claim** are groundless, false, or fraudulent.  However, the **Company's** duty to defend shall terminate upon exhaustion of the applicable Limit of Liability by the payment of **Damages** and/or **Claim Expenses.**

D.   **Settlement of Claims.** The **Company** shall have the right to make such investigation, negotiation or settlement of a covered **Claim** that it deems expedient; provided, however, that the **Company** shall not settle any **Claim** without the consent of the **Insured**, which shall not be unreasonably withheld.  If the **Company** recommends a settlement and the **Insured** refuses to give written consent to such settlement as recommended by the **Company**, then the **Company's** liability shall not exceed the amount which the **Company** would have paid for **Damages** and **Claim Expenses** at the time the **Claim** could have been settled or compromised.

E. **Disciplinary Proceedings.**  The **Company** will reimburse the **Insured** for reasonable attorney fees, costs and expenses resulting from the investigation or defense of each **Disciplinary Proceeding** incurred as a result of a notice of proceeding both first received by the **Insured** and reported in writing to the **Company** during the **Policy Period**, and arising out of a covered **Wrongful Act**.  The maximum amount payable by the **Company** hereunder shall not exceed $25,000 for each **Disciplinary Proceeding**, subject to a maximum aggregate of $100,000 regardless of the number of **Insureds** or the number of **Disciplinary Proceedings**.  The amount payable under this Insuring Agreement is in addition to the Limit of Liability set forth in the Declarations and the Retention is not applicable to such amount.

## II.   DEFINITIONS

Wherever used in this Policy:

A.   **"Application"** means all signed applications, including attachments and other materials submitted therewith or incorporated therein, submitted by the **Insured** to the **Company** for this Policy or for any policy of which this Policy is a direct or indirect renewal or replacement.  **"Application"** shall also include all documents provided by the **Insured** to the **Company** in connection with the underwriting or issuance of this Policy and any information contained on the website(s) of the **Insured**, whether provided to the **Company** directly or indirectly through the use of public databases or similar sources. All such applications, attachments, and materials are deemed attached to and incorporated into this Policy.

B.   **"Bodily Injury"** means physical injury, sickness or disease sustained by a person, including death resulting from an of these at any time.  **"Bodily Injury"** includes emotional distress, or mental anguish whether or not accompanied by physical injury, sickness or disease.

C.   **"Claim"** means a written demand received by the **Insured** for monetary **Damages** which alleges a **Wrongful Act**, including:

1.   the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding;

2.   institution of arbitration, mediation or other formal alternative dispute resolution proceeding;

3.   any written request to toll or waive a statute of limitations.

A **Claim** for injunctive relief alleging any **Wrongful Act** for which insurance would have been granted under this Policy if **Damages** had been sought, will be considered a **Claim** for the purposes of this Policy, but only the **Claim Expenses** arising therefrom will be covered by this Policy**.**

D.   **"Claim Expenses"** means:

1.   reasonable and necessary fees charged by an attorney designated by the **Company**;

2.   all other reasonable fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim**, if incurred by the **Company** or by the **Insured** with the written consent of the **Company**.

**"Claim Expenses"** shall not include (i) salary expenses or wages of any employee or officer of the **Company** or any supervisory counsel retained by the **Company;** (ii) salary expenses or wages of the **Insureds**; or (iii) any fees, costs or expenses incurred in connection with any criminal proceedings or actions against an **Insured**.  The determination by the **Company** as to the reasonableness of **Claim Expenses** shall be conclusive on the **Insured**.

E.   **"Company"** means the insurer named in the Declarations.

F.   **"Computer System"** means computers and associated software, input and output devices, data storage devices, networking equipment and back up facilities.

G. **"Damages"** means any compensatory sum which the **Insured** becomes legally obligated to pay and includes:

1. monetary judgments or settlements;

2. punitive or exemplary damages to the extent such damages are insurable under the law most favorable to the insurability of such damages of any jurisdiction which has a substantial relationship to the **Insured**, the **Company**, this Policy or the **Claim**;

3. pre-judgment and post-judgment interest.

**"Damages"** shall not include:

1. taxes, fines or penalties, sanctions, whether imposed by law or otherwise (except as provided above with respect to punitive or exemplary damages);

2. the return, reduction or restitution of fees, expenses or costs for **Professional Services** performed or to be performed by the **Insured**, or disgorgement by any **Insured**;

3. matters uninsurable under the law pursuant to which this Policy is construed;

4. the cost of correcting, re-performing or completing **Professional Services**;

5. future profits, future royalties, costs of licensing, or other costs of obtaining future use; or the costs to comply with orders granting injunctive relief or non-monetary relief, including specific performance, or any agreement to provide such relief.

H. **"Disciplinary Proceeding"** means a proceeding alleging violation of any disciplinary rule or other professional misconduct before an administrative, regulatory or disciplinary board, or agency with authority to render a determination as to whether such alleged professional misconduct is to be subject to discipline.   However, **"Disciplinary Proceeding"** shall not include a criminal proceeding or an Organizational Peer Review.

I. **"Denial of Service Attack"** means a malicious attack by a third party which is designed to slow or completely interrupt access to a targeted **Computer System** or website by other third parties authorized to gain access to that **Computer System** or website.

J. **"Insured"** means:

1. the **Named Insured** and any Predecessor Firm designated in the Declarations;

2. any individual or professional corporation who is or becomes a partner, officer, director, stockholder, per diem attorney, independent contract attorney, or employee of the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** in rendering **Professional Services**;

3. any individual or professional corporation who was a partner, officer, director, stockholder, per diem attorney, independent contract attorney, or employee of the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** in rendering **Professional Services**;

4. any individual or professional corporation designated "counsel" or "of counsel" to the **Named Insured**, but solely while acting within the scope of their duties as such on behalf of the **Named Insured** for which a fee inures to the **Named Insured**;

5. any individual or professional entity, corporation, or partnership to whose financial assets and liabilities the **Named Insured** becomes the majority successor in interest during the **Policy Period** but only if:

a. within 60 days of becoming the majority successor in interest, the **Named Insured** has provided the **Company** with full particulars of such individual, professional entity, corporation, or partnership and the **Company**, which shall not be required to insure such individual, professional entity, corporation, or partnership, has agreed in writing to insure such individual, professional entity, corporation, or partnership; and

b. the **Named Insured** has paid the additional premium, if any, charged by the **Company** and has agreed to any amendment of the provisions of this Policy;

6. the estate, heirs, executors, administrators, assigns and legal representatives of any **Insured** in the event of death, incapacity, insolvency or bankruptcy, but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured**;

7. the lawful spouse or lawful domestic partner of any **Insured**, if named as a co-defendant with such **Insured** solely by reason of such spouse's status as a spouse or such domestic partner's status as a domestic partner, or such spouse's or domestic partner's ownership interest in property that is sought by a claimant as recovery for an alleged **Wrongful Act** of such **Insured**, but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured**.

All terms and conditions of this Policy including, without limitation, the Retention applicable to **Claims Expenses** and **Damages** incurred by the **Insured**, shall also apply to **Claims Expenses** and **Damages** incurred by the lawful spouse, domestic partner, estate, heirs, executors, administrators, assigns and legal representatives of such **Insured**.

K. **"Insured's Computer System"** means computers and associated software, input and output devices, data storage devices, networking equipment and back up facilities:

1. operated by and either owned by or leased to the **Insured**;

2. operated by a third party service provider and used for the purpose of providing hosted services to the **Insured** or for processing, maintaining, hosting or storing electronic data of the **Insured**, pursuant to a written contract with the **Insured** for such services.

**"Insured's Computer System"** shall also include the websites of the **Insured** and any data, text, sounds, graphics, images or similar matter stored thereon.

L. **"Interrelated Wrongful Acts"** means **Wrongful Acts** that are causally or logically related and include all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, or event, or which are the same, related or continuous acts, regardless of whether the **Claim** or **Claims** alleging such acts involve the same or different claimants, **Insureds** or legal causes of action.

M. **"Malicious Code"** means unauthorized, corrupting or harmful software code, including computer viruses, Trojan horses, keystroke loggers, worms and logic bombs.

N. **"Network Security"** means those activities performed by the **Insured,** or by others for or on behalf of the **Insured,** to protect against **Unauthorized Access** to, **Unauthorized Use** of, or a **Denial of Service Attack** by a third party directed against, or the transmission of **Malicious Code** to, the **Insured's Computer System.**

O. **"Network Security Wrongful Act"** means any actual or alleged act, error, omission, neglect, or breach of duty by an **Insured** or the **Insured's Service Provider,** which causes a breach of the **Insured's Network Security** that results in:

1. the theft, alteration, or destruction of electronic data on the **Insured's Computer System**;

2. the **Unauthorized Access** to or **Unauthorized Use** of the **Insured's Computer System**;

3. the denial of an authorized user's access to the **Insured's Computer System**, unless the denial of such authorized user's access is caused by a mechanical or electrical failure outside the control of the **Insured**;

4. the participation by the **Insured's Computer System** in a **Denial of Service Attack** directed against a third party's **Computer System**; or

5. the transmission of **Malicious Code** from the **Insured's Computer System** to a third party's **Computer System**.

P. **"Personal Information"** means:

1. an individual's name, social security number, medical or healthcare data, other legally protected health information, drivers license number, state identification number, credit card number(s), debit card number(s), address, telephone number(s), bank or other financial institution account numbers, account histories, or passwords; and

2. other nonpublic personal information, in any format, as defined in **Privacy Regulations**.

**"Personal Information"** shall not include information that is lawfully made available to the general public for any reason, including, but not limited to, information lawfully obtained from federal, state or local government agencies.

Q. **"Personal Injury"** means injury other than **Bodily Injury** arising out of one or more of the following offenses:

1. wrongful entry or eviction, trespass, eavesdropping, false arrest or malicious prosecution;

2. invasion, infringement, interference with the right to privacy or of publicity, including false light, public disclosure of private facts, intrusion or commercial appropriation of name or likeness; or

3. defamation, slander or libel.

R. **"Policy Period"** means the period from the inception date of this Policy to the Policy expiration date stated in the Declarations or its earlier cancellation date, if any.

S. **"Privacy Event"** means:

1. an unauthorized disclosure or loss of:

   a. **Personal Information** in the care, custody or control of any **Insured** or **Service Provider**; or

   b. corporate information in the care, custody or control of any **Insured** or **Service Provider** that is specifically identified as confidential or proprietary and which is protected under a written nondisclosure or other confidentiality agreement or other similar contract; or

2. a violation of any **Privacy Regulation**.

T. **"Privacy Regulation"** means the following statutes and regulations, including any amendments thereto, associated with the control and use of personally identifiable financial, medical or other sensitive information:

1. Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) and Health Information Technology for Economic and Clinical Health Act;

2. Gramm-Leach-Bliley Act of 1999;

3. the California Security Breach Notification Act (CA SB 1386) and Massachusetts 201 CMR 17;

4. Identity Theft Red Flags under the Fair and Accurate Credit Transactions Act of 2003;

5. Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce; and

6. other similar state and federal identity theft and privacy protection legislation that requires commercial entities that collect **Personal Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Personal Information** has potentially been compromised.

U. **"Privacy Wrongful Act"** means any actual or alleged act, error, omission, neglect or breach of duty by an **Insured** or by a **Service Provider** for services performed for or on behalf of the **Insured** that results in a **Privacy Event**.

V. **"Professional Services"** means services:

1. provided by any **Insured** to others as a lawyer, mediator, arbitrator or notary public but solely for services on behalf of the **Named Insured** or Predecessor Firm designated in the Declarations; or

2. performed by any **Insured** as an administrator, conservator, receiver, executor, guardian, trustee, or in any other fiduciary capacity, but only if the act or omission in dispute is in the rendering of services ordinarily performed as a lawyer and then only to the extent that such services are on behalf of and inure to the benefit of the **Named Insured** or any Predecessor Firm designated in the Declarations.

W. **"Property Damage"** means:

1. physical injury to or destruction of any tangible property, including the loss of use thereof; or

2. loss of use of tangible property which has not been physically injured or destroyed;

X. **"Retroactive Date"** means the date stated in the Declarations as such.

Y. **"Service Provider"** means a business the **Insured** does not own, operate, or control, but that the **Insured** hires for a fee pursuant to a written contract to perform services related to the conduct of the **Insured's** business, including but not limited to,

1. maintaining, managing, or controlling the **Insured's Computer Systems**;

2. hosting or facilitating the **Insured's** Internet website; or

3. providing other **Technology Services** to the **Insured**.

Z. **"Unauthorized Access"** means the gaining of access to the **Insured's Computer System** by an unauthorized person or persons, or by an authorized person or persons in an unauthorized manner.

AA. **"Unauthorized Use"** means the use of the **Insured's Computer System** by a person unauthorized by the **Insured** or a person authorized by the **Insured** who uses the **Insured's Computer System** for a purpose which is not intended by the **Insured**.

BB. **"Wrongful Act"** means any actual or alleged negligent act, error, or omission committed or attempted in the rendering or failing to render **Professional Services** by any **Insured** on behalf of the **Named Insured,** including but not limited to **Personal Injury.**

CC. **"Technology Services"** means any electronic or computer-based network services, including

1. design, analysis, development, integration, installation, programming, conversion, service, **Network Security,** support, maintenance, repair, sale, or resale of **Computer Systems,** computer networks, electronic systems, computer software, computer hardware, or computer    firmware;

2. database design and the collection, compilation, processing, warehousing, mining, storage, management, or analysis of electronic data;

3. information technology consulting, management, education, or training;

4. **Telecommunications Services;** or

5. Internet **s**ervices, including:

   a. Internet access provision, application service provision, domain name registration, or the provision of search engine, web browser, or electronic mail services;

   b. website design, programming, hosting, managing, or maintenance;

     c.   e-commerce transaction services, electronic exchange services, auction services, managed and **Network Security** services, web portal services; and

     d.   the development, design, and maintenance of chat rooms, blogs, e-mail services or bulletin boards.

DD.  **"Telecommunications Services"** means local, regional and long distance wire line and wireless dial tone access and switching services, toll free services, voice mail, call forwarding, call waiting and caller 10; ground based satellite communication services; DSL, ISDN and VoIP services; video conferencing services; paging services; basic wire maintenance; 911 emergency services; directory services and operator assistance; analysis, design, integration and conversion of telecommunication systems; directory publishing; or project management or consulting services related to any matter described in this definition.

EE.  **"Retention"** means the Self-Insured Retention identified in the Declarations or the Deductible identified in the Declarations, whichever the Named Insured has opted to purchase, as indicated in the Declarations.

## III.  EXCLUSIONS

This Policy shall not apply to any **Damages** or **Claims Expenses** incurred with respect to any **Claim:**

A.  based upon or arising out of any actual or alleged dishonest, criminal, intentional, malicious or fraudulent act, error or omission or any willful violation of any statute or regulation by an **Insured,** if a final adjudication adverse to such **Insured** establishes such a dishonest, criminal, intentional, malicious or fraudulent act, error or omission or willful violation.

B.  for **Bodily Injury** to, or sickness, disease or death of any person, or to **Property Damage**; however, this Exclusion shall not apply to emotional distress or mental anguish caused (i) by **Professional Services**; or (ii) a **Privacy Event** and Insuring Agreement B is purchased**;**

C.  based upon or arising out of any written demand, litigation, proceeding, administrative action or hearing brought prior to or pending as of the Prior and Pending Litigation Date as stated in the Declarations as well as any future litigation, proceeding, administrative action or hearing based upon any such pending or prior litigation, proceeding, administrative action or hearing or derived from the same or similar essential facts or circumstances underlying or alleged in any such pending or prior litigation, proceeding, administrative action or hearing;

D.  based upon or arising out of any circumstance, if written notice of such circumstance has been given under any policy of which this Policy is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

E.  based upon or arising out of any actual or alleged violation of the Employee Retirement Income Security Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statute or common law;

F.  based upon or arising out of any gaining by the **Insured** of any profit, remuneration or advantage to which such **Insured** was not legally entitled, including the disgorgement of any such profit, remuneration or financial advantage by the **Insured**, if a final adjudication adverse to such **Insured** establishes such conduct;

G.  based upon or arising out of any actual or alleged liability assumed by the **Insured** in any express, implied, actual, constructive, oral or written contract, warranty, guarantee or promise, including liquidated damages or penalties of any nature pursuant to a contract or agreement of any kind, but this exclusion shall not apply to liability of the **Insured** which would exist in the absence of such contract or agreement;

H. based upon or arising out of any actual or alleged discrimination, humiliation or harassment, including but not limited to a **Claim** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference;

I. based upon or arising out of any actual or alleged activities of an **Insured** as, or an **Insured** acting in, the capacity as:

1. an officer, director, partner, trustee or employee of a pension, welfare, profit sharing, mutual or investment trust or fund, charitable organization, corporation or business enterprise, other than the **Named Insured;**

2. a public official, employee, or agent of a governmental body, subdivision, or agency, unless the **Insured** is deemed to be a public official, employee, or agent of such entity solely by virtue of rendering **Professional Services** to it; or

3. a fiduciary under the Employee Retirement Income Security Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statute or common law;

J. based upon or arising out of the **Insured's** actual or alleged intentional failure to disclose the loss of **Personal Information** in violation of any law or regulation. Solely with respect to the applicability of this exclusion under Insuring Agreement B., only facts pertaining to and knowledge possessed by any principal, partner, officer, director or organizational equivalent of an **Insured** shall be imputed to other **Insureds**;

K. based upon or arising out of any actual or alleged certification or acknowledgment by an **Insured** in the capacity as a notary public of a signature on a document which the **Insured** did not personally witness being placed on the document;

L. based upon or arising out of the actual, alleged or threatened discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon the land, the atmosphere or any watercourse or body of water, including an aquifer or groundwater;

M. based upon or arising out of any actual or alleged species of fungi, including mold, mildew and any mycotoxins, mold allergens, spores, scents or byproducts produced or released by fungi;

N. by any **Insured** under this insurance against another **Insured**;

O. made against any **Insured** as the beneficiary or distributee of any trust or estate;

## IV. TERRITORY

This Policy applies to any **Wrongful Act** committed by the **Insured** anywhere in the world, provided that suit is brought or **Claim** is made within the United States, its territories and possessions.

## V. LIMITS OF LIABILITY

A. The liability of the **Company** for all **Claim Expenses** and **Damages** for each **Claim** first made against the **Insured** and reported to the **Company** during the **Policy Period**, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations for each **Claim**.

B. The total liability of the **Company** for all **Claim Expenses** and **Damages** for all **Claims** first made against the **Insured** and reported to the **Company** during the **Policy Period**, the Automatic Extended Reporting Period or the Optional Extended Reporting Period, if purchased, shall not exceed the amount stated in the Declarations as **Policy Period Aggregate**.

C.  The Limit of Liability for **Claims** first made and reported during the Automatic Extended Reporting Period or the Optional Extended Reporting Period shall be part of, and not in addition to the Limit of Liability as stated in the Declarations and as stated above.  If any **Insured** has purchased or does purchase other insurance covering **Claims** first made and reported during the Automatic Extended Reporting Period or the Optional Extended Reporting Period, the coverage provided under this Policy for such **Claims** shall apply in excess of such insurance.

D.  The amount shown as Each Claim under Retention shall be applicable to all **Claim Expenses** and **Damages** for each and every **Claim** and shall remain the responsibility of the **Insured** subject to the amount shown as Policy Period Aggregate under Retention on the Declarations.  A single Each Claim **Retention** shall apply to **Claims**  arising from the same or related **Wrongful Acts.**

If Deductible is shown as Type on the Declarations, the  **Insured** will pay to the **Company**  all **Claim Expenses** and **Damages**  up to the Each Claim amount or Policy Period Aggregate amount, as applicable.  Such amount shall be paid by the **Insured** within thirty (30) days of written demand by the **Company**.  The Each Claim and Policy Period Aggregate Limits of Insurance shall be reduced by the amount of such deductibles incurred and such deductibles are a part of, and not in addition to, the Limits of Insurance.

If Self-Insured Retention is shown as Type on the Declarations, the **Insured** will pay all **Claim Expenses** and **Damages**  up to the Each Claim amount or Policy Period Aggregate amount, as applicable, as a condition precedent to payment of any **Claim Expenses** or **Damages** by the **Company** hereunder. The Each Claim and Policy Period Aggregate shown under Retention for Self-Insured Retention on the Declarations are in addition to the Each Claim and Policy Period Aggregates Limits of Insurance, respectively.

E.  **Multiple Insureds, Claims and Claimants.**  The inclusion herein of more than one **Insured**  shall not operate to increase the **Company's** Limit of Liability.  **Claims** alleging, based upon, arising out of or attributable to the same **Wrongful Act(s)** or **Interrelated Wrongful Acts** shall be treated as a single **Claim** regardless of whether made against one or more than one **Insured**.  All such **Claims**, whenever made, shall be considered first made during the **Policy Period**, the Automatic Extended Reporting Period, or Optional Extended Reporting Period, if purchased, in which the earliest **Claim** arising out of such **Wrongful Act(s)** or **Interrelated Wrongful Acts** was first made, and all such **Claims** shall be subject to the Limit of Liability and Retention set forth in such Policy.

F.  Subject to all limits of liability described in A., B., C., and E., above, the total liability of the **Company** under any policy or policies not specifically issued as an excess policy for each **Claim** to which this Policy applies shall not exceed the amount stated in the Declarations under Maximum Limit as each **Claim** regardless as to the number or type(s) of coverages or policies, whether issued by the **Company** or any of its affiliates, that apply.

Subject to all limits of liability described in A., B., C., and E., above, the total liability of the **Company** under any policy or policies not specifically issued as an excess policy for all **Claims** to which this Policy applies shall not exceed the amount stated in the Declarations under Maximum Limit as Policy Period Aggregate regardless as to the number or type(s) of coverages or policies, whether issued by the **Company** or any of its affiliates, that apply.

## VI.  DUTIES IN THE EVENT OF A CLAIM

A.  **Notice of Claims.**  As a condition precedent to coverage under this Policy, the **Insured** shall provide the **Company** written notice of any **Claim** made against any **Insured** as soon as practicable, but in no event later than: (i) the expiration date of this Policy; (ii) the expiration of the Automatic Extended Reporting Period; or (iii) the expiration of the Optional Extended Reporting Period, if purchased.

In the event a **Claim** is brought against any **Insured**, the **Insured** shall forward to the **Company** every demand, notice, summons, complaint or other process or any threat of an intention to hold the **Insured**

responsible for any **Wrongful Act** received directly by the **Insured** or by the **Insured's** representatives. Written notice of any **Claim** against any **Insured**, as well as each demand on or suit against the **Insured**, shall be delivered to the **Company** as follows:

| | | |
|---|---|---|
| 1. | **By Mail:** | AmTrust North America<br>P.O. Box 650767<br>Dallas, TX 75265-0767 |
| 2. | **By Fax:** | (877) 669-9140 |
| 3. | **By Electronic Mail:** | professionalclaims@amtrustes.com |

B. **Assistance and Cooperation of the Insured.**  The **Insured** shall cooperate with the **Company** and upon the **Company's** request shall (i) provide to the **Company** copies of documents and such other things held by or available to the **Insured** which relate to any **Claim** or to the **Wrongful Act**, transactions or other events which shall have given rise to such **Claim**, (ii) submit to examination and interview by a representative of the **Company**, under oath if required, (iii) attend hearings, depositions and trials, and (iv) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and other proceedings, as well as in the giving of a written statement or statements to the **Company's** representatives and meeting with such representatives for the purpose of investigation and/or defense.

The **Insured** shall further cooperate with the **Company** and do whatever is necessary to secure and affect any rights of indemnity, contribution or apportionment which any **Insured** may have.  The **Insured** shall exercise the right to either reject or demand the arbitration of any **Claim** made against the **Insured** in accordance with the written instructions of the **Company**.  The **Insured** shall not, except at the **Insured's** own cost, make any payment, admit any liability, settle any **Claims**, or assume any obligation, provided, however, if this Policy is subject to a Self-Insured Retention, the **Insured** shall have the right to make any settlement of any **Claim** covered by the terms of this Policy subject to the condition that the aggregate amount of such settlement and of the **Claim Expenses** incurred in connection with such **Claim** shall not exceed the Self-Insured Retention identified in the Declarations.

## VII. NOTICE OF CIRCUMSTANCE/CLAIMS MADE EXTENSION

If during the **Policy Period** any **Insured** first becomes aware or has reasonable grounds to suspect that an **Insured** has committed or may have committed a specific **Wrongful Act** for which coverage is otherwise provided hereunder, and provided the **Insured** during the **Policy Period** gives notice to the **Company** of:

A. the specific **Wrongful Act**;

B. the injury or damage which has resulted or may result from such **Wrongful Act**; and

C. the circumstances by which the **Insured** first became aware of or suspected such  **Wrongful Act**;

then any **Claim** that may subsequently be made against any **Insured** arising out of such **Wrongful Act** shall be deemed for the purposes of this insurance to have been made during the **Policy Period**.

## VIII. EXTENDED REPORTING PERIODS

A. **Automatic Extended Reporting Period.**  If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Company** shall provide the **Named Insured** an automatic and noncancellable extension of this Policy, subject otherwise to its terms, Limits of Liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** during the ninety (90) days immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise

covered by this insurance.  This Automatic Extended Reporting Period shall terminate after ninety (90) days from the effective date of such nonrenewal or cancellation.

B.  **Optional Extended Reporting Period.**  If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Named Insured**, upon payment of an additional premium as set forth herein, shall have the option to extend this Policy, subject otherwise to its terms, Limit of Liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** during the Optional Extended Reporting Period as purchased immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise covered by this insurance.  The extension, if purchased, shall be endorsed hereto and shall be referred to as the "Optional Extended Reporting Period."  The premium and the extension period for the Optional Extended Reporting Period, if purchased, shall be determined by the **Company** to be agreed to by the **Insured**.

C.  The **Named Insured's** option to elect the Optional Extended Reporting Period must be exercised by notice in writing to the **Company** not later than thirty (30) days after the effective date of the nonrenewal or cancellation of this Policy.  If the premium for the Optional Extended Reporting Period is not paid within thirty (30) days of the effective date of the nonrenewal or cancellation of this Policy, the option to elect the Optional Extended Reported Period shall be void.

D.  At the commencement of the Optional Extended Reporting Period, the entire premium shall be deemed fully earned, and in the event the **Named Insured** terminates the Optional Extended Reporting Period for any reason, the **Company** shall not be liable to return to the **Named Insured** any portion of the premium for the Optional Extended Reporting Period.

E.  Unless expressly waived by the **Company**, As a condition precedent to the **Named Insured's** option to elect the Optional Extended Reporting Period, any and all premiums and **Retentions** that are due must have been paid and the **Named Insured** must have complied with all other terms and conditions of this Policy.  If such conditions precedent are not satisfied or if the notice required under this Section VII. C. is not timely given to the **Company**, the **Named Insured** shall not at a later date be able to exercise such option.

F.  If this Policy is cancelled or nonrenewed due to the nonpayment of premium, the Automatic Extended Reporting Period or Optional Extended Reporting Period shall not be available to any **Insured**.   The Automatic Extended Reporting Period or Optional Extended Reporting Period shall not be available to any **Insured**: (i) whose fraud causes this Policy to be cancelled or nonrenewed, or (ii) whose license, right to practice, or right to conduct business has been revoked, suspended by, or surrendered at the request of, any regulating authority.

G.  The fact that the period during which **Claims** must first be made against the **Insured** and reported to the **Company** under this Policy is extended by virtue of any Automatic Extended Reporting Period or Optional Extended Reporting Period shall not in any way increase the Limits of Liability of this Policy.

H.  The first ninety (90) days of the Optional Extended Reporting Period, if purchased, shall run concurrently with the Automatic Extended Reporting Period.

I.  **Nonpracticing Reporting Period.** If any **Insured** (except any part time, per diem, of counsel, or independent contract attorney) shall permanently retire or otherwise cease the private practice of law during the **Policy Period,** then such **Insured,** upon payment of an additional premium, which shall be determined by the **Company** and agreed to by the **Insured**, shall have the option to extend the insurance afforded by this Policy subject otherwise to its terms, limit of liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** and reported to the **Company** during such Nonpracticing Extended Reporting, as elected by such **Insured,** immediately following the date of the expiration of this Policy or the effective date of this Policy's cancellation, if sooner, hereinafter referred to as the "Nonpracticing Reporting Period." Coverage for the Nonpracticing Reporting Period shall only apply to a **Wrongful Act** committed or alleged to have been committed by the **Insured** in rendering or failing to

render **Professional Services** before the **Insured**'s date of retirement or cessation of the private practice of law and which is otherwise covered by this Policy and, provided further that there is no other insurance in effect on or after the **Insured**'s date of retirement or cessation of the practice of law which covers the **Insured** for such liability or **Claim** and the **Insured** has not engaged in the practice of law since retirement or when he or she otherwise ceased the practice during the **Policy Period.** Any such other insurance shall render coverage for the Nonpracticing Reporting Period inapplicable and of no force or effect, even if the limits of liability of such other insurance may be inadequate to pay all losses and **Claim Expenses** and/or the deductible amount and deductible provisions of such other insurance may be different from those of this Policy.

The extension of coverage for the Nonpracticing Reporting Period shall be endorsed to this Policy, if elected.

As a condition precedent to any **Insured** electing the Nonpracticing Reporting Period, the full annual premium of this Policy and any Retentions that are due must have been paid and all other terms and conditions of this Policy must have been fully complied with. The Nonpracticing Reporting Period shall not be available when any **Insured**'s license or right to practice his or her profession is revoked, suspended by or surrendered at the request of any regulatory or judicial authority.

The **Insured**'s right to elect the Nonpracticing Reporting Period must be exercised by written notice not later than sixty (60) days after the expiration date of this Policy or the effective date of this Policy's cancellation, if sooner. Such notice must indicate the total extension period desired and must include full payment of premium, if any, for such Nonpracticing Reporting Period.

## IX.  GENERAL CONDITIONS

A.  **Subrogation.** In the event of any payment under this Policy, the **Company** shall be subrogated to all the **Insured's** rights of recovery therefore against any person or organization. The **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights and the **Insured** shall do nothing to prejudice such rights.  Any amount recovered upon the exercise of such rights of subrogation shall be applied as follows: first, to the repayment of expenses incurred toward subrogation; second, to **Damages** and/or **Claim Expenses** paid by the **Insured** in excess of the Limits of Liability hereunder; third, to **Damages** and/or **Claim Expenses** paid by the **Company**; fourth, to **Damages** and **Claim Expenses** paid by the **Insured** in excess of the retention; and last, to repayment of the retention.

B.  **Action Against the Company.** No action shall lie against the **Company** unless, as a condition precedent thereto, the **Insured** shall have fully complied with all the terms of this Policy, nor until the amount of the obligation of the **Insured** to pay shall have been fully and finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Company**.  In the event any person or organization or the legal representative thereof has secured a judgment against an **Insured** and such judgment remains unsatisfied after the expiration of thirty (30) days from the service of notice of entry of the judgment upon the attorney for the **Insured**, or upon the **Insured**, and upon the **Company**, then an action may, except during a stay or limited stay of execution against the **Insured** on such judgment, be maintained against the **Company** under this Policy for the amount of such judgment to the extent of the insurance afforded by this Policy.  Nothing contained in this Policy shall give any person or organization the right to join the **Company** as a party in any action against any insured to determine the **Insured's** liability.  Bankruptcy or insolvency of any **Insured** or of the **Insured's** estate shall not relieve the **Company** of any of its obligations hereunder.

C.  **Application.** In issuing this Policy, the **Company** has relied upon the statements, representations and information contained in the **Application**.  Every **Insured** acknowledges and agrees that all such statements, representations and information (i) are true and accurate, (ii) were made or provided in order to induce the **Company** to issue this Policy, and (iii) are material to the **Company's** acceptance of the risk

to which this Policy applies.  If any of the statements, representations or information in the **Application** are not true and accurate, there shall be no coverage for any **Claim** under this Policy with respect to any **Insured Person** who knew, as of the effective date of the **Policy Period**, of such information that was not truthfully and accurately disclosed in the **Application**.  The knowledge of any **Insured Person** shall not be imputed to any other **Insured Person** for the purposes of determining coverage.

D.  **False or Fraudulent Claims**.  If any **Insured** shall commit fraud in proffering any **Claim,** whether as to the amount of the **Claim** or otherwise, this insurance shall be void as to such **Insured** from the date such fraudulent **Claim** is proffered.

E.  **Other Insurance.**  This insurance shall be excess over any other valid and collectable insurance available to the **Insured** whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Policy.

F.  **Changes.**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the **Company** shall not affect a waiver or a change in any part of this Policy or estop the **Company** from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by written endorsement issued to form a part of this Policy.

G.  **Assignment.**  Assignment of interest under this Policy shall not bind the **Company** unless its consent is endorsed in writing hereon.

H.  **Cancellation.**  This Policy may be canceled by the **Named Insured** by mailing or delivering prior written notice to the **Company** or by surrender of this Policy to the **Company**.  If this Policy is canceled by the **Named Insured**, the **Company** shall retain the greater of the customary short rate proportion of the premium hereon or the Earned Minimum Premium set forth in the Declarations.  This Policy may also be canceled by or on behalf of the **Company** by delivering to the **Named Insured** by registered, certified or other first class mail, or by electronic means, written notice stating when not less than ninety (90) days after the date of such notice the cancellation shall be effective.  The proof of delivery of such notice shall be sufficient proof of notice.  If this Policy is canceled by or on behalf of the **Company**, the **Company** shall retain the pro rata proportion of the premium hereon.  The **Company** may cancel this Policy on ten (10) days notice for nonpayment of premium due.

I.  **Conformity to Statute.**  Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy are hereby amended to conform to such laws.

J.  **Singular Form of a Word.**  Whenever the singular form of a defined word is used herein, the same shall include the plural when required by context.

K.  **Named Insured Authorization.**  By acceptance of this Policy, the **Named Insured** agrees to act on behalf of every **Insured** with respect to the payment or return of premium, the receipt and acceptance of any endorsements, the cancellation of the Policy, the negotiation of renewal, and the giving and receiving of any notice provided for by the terms and conditions of this Policy.

L.  **Mergers and Acquisitions.**

1.  If, during the **Policy Period**, the **Named Insured** acquires a majority of the assets of another entity, creates another entity, or acquires any entity by merger into or consolidation with the **Named Insured**, such entity shall not be covered under this Policy unless the **Insured**, prior to such acquisition or creation:

a.  gives written notice of such acquisition or creation to the **Company**;

b.  pays any additional premium required by the **Company**; and

c.  agrees to any additional terms and conditions of this Policy as required by the **Company**.

2.  If, during the **Policy Period**, any of the following events occur:

a.  the acquisition of the **Named Insured**, or all of or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

b.  the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the partners, principals, or directors of the **Named Insured**,

then, coverage under this Policy will continue in full force and effect until the termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** taking place before such event.  Coverage under this Policy will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event.

M.  **Bankruptcy.**  The bankruptcy or insolvency of the **Insured s**hall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this Policy.

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 014 01 14**

# POLICYHOLDER'S GUIDE TO REPORTING A PROFESSIONAL LIABILITY CLAIM

A.  As soon as you are aware of an event that will give rise to a claim being made against you, please be sure to immediately report the matter to AmTrust North America.  Be sure to include your policy number and the name of the insured as it is stated on the policy.

B.  New claims may be reported 24/7 to **AmTrust North America** as follows:

| | | |
|---|---|---|
| 1. | **By Mail:** | AmTrust North America<br>P.O. Box 650767<br>Dallas, TX 75265-0767 |
| 2. | **By Fax:** | (877) 669-9140 |
| 3. | **By Electronic Mail:** | professionalclaims@amtrustes.com |
| 4. | **By Telephone:** | (866) 272-9767 |

C.  **AmTrust North America** Claim Office may be reached as follows:

| | | |
|---|---|---|
| 1. | **By Mail:** | AmTrust North America<br>135 S. LaSalle St. Suite 1925<br>Chicago, IL. 60603 |
| 2. | **By Telephone:** | Jay Fenton       312-803-6083<br>Paul Poppish   312-803-4630 |
| 3. | **By Fax:** | 312-781-0423 |

This page intentionally left blank

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 017 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL TERRORISM EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that this Policy does not apply to any **Claim** based upon, arising out of, or involving in any way "an act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002" as amended.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 031 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION

In consideration of the premium charged it is hereby understood and agreed that:

I.   This Policy does not apply:

   A.   Under any coverage part, to **Bodily Injury** or **Property Damage**

   1.   with respect to which an **Insured** under this Policy is also an insured under a nuclear liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   2.   resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B.   Under any Medical Payments Coverage, or any Supplementary Payments Provision relating to first aid, to expenses incurred with respect to **Bodily Injury** resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

   C.   Under any Liability Coverage, to **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if

   1.   the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an **Insured** or (b) has been discharged or dispersed therefrom;

   2.   the nuclear material is contained in spent fuel or waste at any time possessed, handled, use, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

   3.   the **Bodily Injury** or **Property Damage** arises out of the furnishing by an **Insured** of **Professional Services**, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to property damage to such nuclear facility and any property threat

II.   As used in this endorsement:

   "hazardous properties"  include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or by-product material;

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof,

"spent fuel"  means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste"  means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under Paragraph (a) or (b) thereof,

"nuclear facility" means:

1. any nuclear reactor,

2. any equipment or device designed or used for (a) separating the isotopes of uranium or plutonium, (b) processing or utilizing spent fuel, or (c) handling, processing or packaging waste,

3. any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

4. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor"  means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**"Property Damage"** is amended to include all forms of radioactive contamination of property.

All other terms and conditions remain unchanged.

POLICY NUMBER:  AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 048 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# 50/50 CONSENT TO SETTLE CLAUSE
# FOR LAWYERS

In consideration of the premium charged, it is hereby understood and agreed that Section I.D. of this Policy shall be amended to read as follows:

**Section I.      INSURING AGREEMENTS**

**D.   Consent to Settle.** The **Company** shall have the right to make any investigation it deems necessary and, with the written consent of the **Insured**, make any settlement of a **Claim** covered by this Policy. If the **Company** recommends settlement or compromise of a **Claim**, and the **Insured** refuses to give written consent to settlement as recommended by the **Company**, then the **Insured** thereafter shall negotiate or defend such **Claim** independently of the **Company** and on the **Insured's** own behalf. In such event, the **Insured** shall be solely responsible for fifty percent (50%) of all **Claim Expenses** incurred or paid by the **Insured** after the date the **Insured** refused to consent to settlement as recommended by the **Company**, and the **Insured** shall also be responsible for fifty percent (50%) of all **Damages** in excess of the amount for which settlement could have been made as recommended by the **Company**; provided that the **Company's** liability under this Policy for such **Claim** shall not exceed the remaining portion of the applicable Limits of Liability.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 050 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MINIMUM RETAINED PREMIUM

It is hereby understood and agreed that paragraph IX.H. is deleted in its entirety and replace with the following:

**Section IX.  GENERAL CONDITIONS**

**H.  Cancellation.**  This Policy may be canceled by the **Named Insured** by mailing or delivering prior written notice to the **Company** or by surrender of this Policy to the **Company**.  If this Policy is canceled by the **Named Insured**, the **Company** shall retain the greater of the customary short rate proportion of the premium hereon or $7,056          .  This Policy may also be canceled by or on behalf of the **Company** by delivering to the **Named Insured** by registered, certified or other first class mail, or by electronic means, written notice stating when not less than ninety (90) days after the date of such notice the cancellation shall be effective. The proof of delivery of such notice shall be sufficient proof of notice.  If this Policy is canceled by or on behalf of the **Company**, the **Company** shall retain the pro rata proportion of the premium hereon.  The **Company** may cancel this Policy on ten (10) days notice for nonpayment of premium due.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 088 01 14**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OPTIONAL EXTENDED REPORTING PERIOD AMENDMENT

In consideration of the premium charged, it is hereby understood and agreed that Section VIII. B. of this Policy shall be deleted in its entirety and replaced with the following:

**SECTION VIII.   EXTENDED REPORTING PERIODS**

B.  **Optional Extended Reporting Period**. If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Named Insured**, upon payment of an additional premium as set forth herein, shall have the option to extend this Policy, subject otherwise to its terms, Limits of Liability, exclusions and conditions, to apply to **Claims** first made against the **Insured** during the 12, 24, 36, 48, or 60 months as purchased immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise covered by this insurance. The extension, if purchased, shall be referred to as the "Optional Extended Reporting Period." The premium for the Optional Extended Reporting Period, if purchased, shall be 12 months at 100%, 24 months at 150% ,36 months at 175% , 48 months at 200%, or 60 months at 250% of the full annual premium for this Policy, plus any additional premium owed for this Policy

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER : AES1045271 03                                        **PROFESSIONAL LIABILITY**
                                                                    **AES PL 091 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SPLIT RETROACTIVE DATE ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that:

The liability of the **Company** for all **Claims Expenses** and **Damages** for each **Claim** made against the **Insured** for a **Wrongful Act** and the **Retroactive Date** of the Declarations is revised as follows:

First **Retroactive Date**          :          **3/6/2018**

    Program Structure          :          **SELF INSURED RETENTION / DEDUCTIBLE**
                                $ **10,000** Each Claim
                                $ **N/A** Aggregate

    Limits of Liability          :          $ **1,000,0000** Each Claim
                                $ **2,000,000** Aggregate

Second **Retroactive Date**          :          **12/28/2017**

    Program Structure          :          **SELF INSURED RETENTION / DEDUCTIBLE**
                                $ **10,000** Each Claim
                                $ **N/A** Aggregate

    Limits of Liability          :          $ **500,000**  Each Claim
                                $ **1,000,000** Aggregate

Third **Retroactive Date**          :          **12/28/2010**

    Program Structure          :          **SELF INSURED RETENTION / DEDUCTIBLE**
                                $ **10,000**  Each Claim
                                $ **N/A** Aggregate

    Limits of Liability          :          $ **100,000**  Each Claim
                                $ **300,000** Aggregate

This endorsement has no impact, and shall not increase, the Policy Period Aggregate as state in the Limits of Insurance and Maximum Limit sections of the Declarations.

All other terms and conditions of this Policy remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 103 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE EXTENSION – CRISIS MANAGEMENT

In consideration of the premium charged, it is hereby understood and agreed that the **Company** shall provide a $ 10,000_____ sublimit for **Crisis Management Expenses** the **Insured** incurs resulting directly from any **Claim** covered under this policy.  The sublimit shall be part of and not in addition to the Limit of Liability set forth in the Declarations Page.

It is further understood and agreed that the following definition shall be added to **Section II** of this Policy:

**Section II.     DEFINITIONS**

**"Crisis Management Expenses"** means the reasonable and necessary costs of retaining for a stipulated period of time with the prior approval of the **Company**, an independent public relations consultant and the cost of associated advertising and public relations media and activities.

All other terms and conditions remain unchanged.

This page intentionally left blank

POLICY NUMBER: AES1045271 03

**PROFESSIONAL LIABILITY**
**AES PL 111 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SELF INSURED RETENTION AMENDMENT
# FOR ARBITRATION OR MEDIATION

In consideration of the premium charged, it is hereby understood and agreed that the following shall be added to Section V.D. of this Policy:

If the **Company** and the **Insured** agree to use arbitration or mediation to resolve a **Claim**, and the **Company** and the **Insured** subsequently resolve the **Claim** by arbitration or mediation, then the self-insured retention obligation of the **Insured** for such **Claim** shall be reduced by fifty percent (50%) to a maximum reduction of $25,000.

All other terms and conditions remain unchanged.

This page intentionally left blank

# Privacy Policy

## Associated Industries Insurance Company, Inc.

We value your business and trust in us and respect the privacy and confidentiality of your nonpublic personal information.

## Our Practices Regarding Privacy and Confidentiality

We are committed to keeping your information secure and confidential, regardless of whether information is received by mail, telephone, Internet or in person.

The nonpublic personal information about you that is collected is utilized only to the extent necessary to effect, deliver, administer or enforce insurance service to you and is disclosed only as permitted by law.  We may also disclose certain information to nonaffiliated third parties.

If you prefer that we not disclose nonpublic personal information about you to third parties, you may opt out of those disclosures, that is, you may direct us not to make those disclosures by contacting us at the address and phone number listed below.

Likewise, to the extent we utilize other organizations, such as general agents and third party administrators, to support our business; we require them to abide by the requirements of the applicable privacy laws and by our privacy policy.

## Information We Collect

We gather information about you in connection with providing our products and services to you and to support our business operations.  This includes information you may provide to us, such as from your insurance application, and information about you from another source, such as a credit bureau.

## Information We May Disclose To Affiliates or Third Parties

Except as noted herein, we do not disclose nonpublic personal information unless authorized by you.  We may, without authorization but only as permitted or required by law, provide nonpublic personal information about you to persons or organizations both inside and outside of Associated Industries Insurance Company, Inc. in order to fulfill a transaction requested, service policies, investigate and/or handle claims, detect and/or prevent fraud, participate in insurance support organizations, or comply with lawful requests from regulatory or law enforcement authorities or a court of law. These include, for example: affiliated companies, claims adjusters or administrators, insurance agents or brokers, medical providers, program managers, consumer reporting agencies, governmental agencies, auditors, lienholders, mortgagees, and assignees.

## Information Confidentiality and Security

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you.  We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## Access to Your Information

You have the right to know what kind of information we keep in our files about you, to have the reasonable access to it and receive a copy. Contact us at the address noted below should you have questions about what information we may have on file.  All written requests must include your name, address, telephone number, and a photocopy of a picture ID for identification purposes.  We are dedicated to maintaining accurate customer records and shall strive to correct any inaccurate information noted in a timely manner.

**Associated Industries Insurance Company, Inc.**
Associated Industries Insurance Company, Inc.
P.O. Box 318004
Cleveland, OH 44131-0880
Attention:  Privacy Manager

This page intentionally left blank

FILED
DALLAS COUNTY
1/31/2018 4:17 PM
FELICIA PITRE
DISTRICT CLERK
Marcus Turner

DC-18-01385

CAUSE NO. _____

| | | |
|---|---|---|
| JB&A EXTENDED WARRANTIES, LLC | § | IN THE JUDICIAL DISTRICT |
| | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | _____ DISTRICT COURT |
| | § | |
| VELA WOOD, P.C., AND | § | |
| RADNEY WOOD, INDIVIDUALLY | § | |
| | § | |
| DEFENDANTS | § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW JB & A Extended Warranties, LLC, Plaintiff in the above-captioned and numbered cause, and files this Original Petition complaining of Vela Wood, P.C. and Radney Wood, individually, and would respectfully show unto the Court the following:

### I. DISCOVERY CONTROL PLAN

1.1    Plaintiff affirmatively pleads that discovery should be conducted in accordance with discovery control plan, level 3, under Rule 190.4 of the Texas Rules of Civil Procedure, and Plaintiff hereby moves for entry of a scheduling order upon the appearance of the Defendants.

### II. PARTIES

2.1    Plaintiff, JB&A Extended Warranties, LLC, is a limited liability company organized under the laws of the State of Texas, authorized to do business in the State of Texas, with a principal place of business in Dallas County, Texas and may be served with process through its attorney, Frank Hill, Hill Gilstrap, P.C., 1400 W. Abram Street, Arlington, Texas 76013.

2.2    Defendant Vela Wood, P.C. is a professional corporation organized under the laws of the State of Texas.  Vela Wood, P.C. may be served with process by serving its registered agent

PLAINTIFF'S ORIGINAL PETITION                                                                 Page 1

# EXHIBIT C

Kevin M. Vela located at 5307 E. Mockingbird Lane, Suite 802, Dallas, TX 75206 or wherever he may be found.

2.3     Defendant Radney Wood is an individual residing in Austin, Texas and he may be served with process at 222 E. Riverside, Apartment 230, Austin, Texas 78704 or at 5307 E. Mockingbird Lane, Suite 802, Dallas, TX 75206, which is his place of business, or wherever he may be found.

2.4     Vela Wood, P.C. and Radney Wood, individually, will be collectively referred to herein as "Defendants."

### III. JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds this Court's minimum jurisdictional limits.

3.2     This Court has personal jurisdiction over Vela Wood, P.C. because it is a Texas professional corporation organized under the laws of the State of Texas and its principal place of business is 5307 E. Mockingbird Lane, Suite 802, Dallas, TX 75206. Further, this suit, wholly or in part, concerns acts or omissions committed by Vela Wood, P.C. in the State of Texas.

3.3     This Court has personal jurisdiction over Radney Wood, individually, because he is a resident of the State of Texas and this suit, wholly or in part, concerns acts or omissions committed by Radney Wood, in the State of Texas.

3.4     Pursuant to Section 15.002(a)(3) of the Texas Civil Practices and Remedies Code, venue is proper in Dallas County, Texas, because Dallas County, Texas is the county in which Vela Wood, P.C.'s principal office in the State of Texas is located.

3.5     Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that at this time they seek monetary relief over $1,000,000.

## IV. FACTS

4.1      Defendants are attorneys that represented JB & A Extended Warranties, LLC ("JB & A") as recently as December 2017.  Accordingly, Defendants owe fiduciary duties to JB & A.

4.2      Defendants have breached their fiduciary duties to JB & A and violated the Canons of Ethics.

## V. CAUSES OF ACTION

5.1      <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative. Plaintiff incorporates all paragraphs above and below as if fully stated herein.

**COUNT 1:      <u>Breach of Fiduciary Duties by Defendants</u>**

5.2      Defendants are attorneys that represented Plaintiff as recently as December 2017. Accordingly, Defendants owe duties of the highest fidelity and loyalty to Plaintiff. Defendants' actions and/or omissions constitute breaches of their fiduciary duties to Plaintiff. As such, Defendants' breaches directly and proximately caused and continues to cause actual and consequential damages to Plaintiff. Plaintiff's injury resulted from Defendants' intentional deceit, gross negligence, malice, or actual fraud, which also entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code §41.003(a).  As a result, Plaintiff has been damaged in an amount within the jurisdictional limits of this Court, for which he now sues.

**COUNT 2:      <u>Fraud</u>**

5.3      Defendants made actual misrepresentations to Plaintiff. Defendants knew these representations were false. Plaintiff relied on the representations of Defendants which directly and proximately caused and continues to cause actual and consequential damages to Plaintiff in excess of the minimum jurisdictional limits of this Court. Plaintiff's injury resulted from Defendants'

intentional deceit, gross negligence, malice, or actual fraud, which also entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code §41.003(a). As a result, Plaintiff has been damaged in an amount within the jurisdictional limits of this Court, for which he now sues.

**COUNT 3:**     <u>**Negligence/Gross Negligence**</u>

5.4     Defendants' acts and omissions described herein constitute negligence. Defendants owed a duty to Plaintiff and breached that duty when Defendants failed to exercise that degree of care that a reasonably prudent person would in a similar situation. Defendants' acts and/or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, when viewed from the standpoint of Defendants. Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights and/or welfare of Plaintiff. As a direct and proximate result of such negligence and/or gross negligence, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which he now sues.

## VI.     ACTUAL DAMAGES, EXEMPLARY DAMAGES, ATTORNEYS FEES, COSTS, AND INTEREST

6.1     <u>Actual Damages</u>.  As a result of the wrongful acts of Defendants, as alleged above, Plaintiff has suffered injuries and actual damages in a sum in excess of this Court's minimum jurisdictional limits. Plaintiff seeks to recover all such actual damages from Defendants occasioned by their wrongful acts and/or omissions.

6.2     <u>Disgorgement</u>.  Plaintiff also pleads for disgorgement of any and all monies paid by Plaintiff to Defendants.

6.3     <u>Exemplary Damages</u>.  As described above, Defendants' breach of their fiduciary duties to Plaintiff, therefore, exemplary damages should be awarded against Defendants and in

favor of Plaintiff.  Defendants acted with actual malice and a gross disregard for the rights of Plaintiff with the knowledge and intent that harm would result to the Plaintiff as a result of Defendants' conduct. Plaintiff seeks to recover exemplary or punitive damages in a sum as may be reasonably set in this case.

6.4    Attorneys' Fees and costs.  For all counts, Plaintiff pleads for the recovery of its attorneys' fees and expenses, and Court costs, to the fullest extent of applicable law.

6.5    Pre-judgment and Post-judgment interest.  For all counts, Plaintiff pleads for pre-judgment and post-judgment interest to the fullest extent of applicable law.

## VII.    CONDITIONS PRECEDENT

7.1    All conditions precedent to Plaintiff's right to the relief sought herein have been performed or have occurred.

## VIII.    JURY DEMAND

8.1    Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff hereby requests a jury trial and has tendered, or will tender, the requisite fee.

## PRAYER

ACCORDINGLY, Plaintiff respectfully requests that Defendants be cited to appear and answer, and that Plaintiff, upon final hearing or trial of this cause, be granted judgment against Defendants awarding Plaintiff its actual and consequential damages, disgorgement of all attorney's fees paid by Plaintiff to Defendants, exemplary damages against Defendants, reasonable and necessary attorneys' fees and costs (insofar as is permitted by law), pre- and post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

/s/ Frank Hill
Frank Hill
State Bar No. 09632000
fhill@hillgilstrap.com
Gregory A. Eyster
State Bar No.  24054562
geyster@hillgilstrap.com
Hunter Cox
State Bar No.  24101654
hcox@hillgilstrap.com
M. Scott Stooksberry
State Bar No. 19311100
msstooksberry@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 fax

*and*

Blake L. Beckham
State Bar No. 02016500
blake@beckham-group.com
Jose M. Portela
State Bar No. 90001241
jose@beckham-group.com
THE BECKHAM GROUP, P.C.
3400 Carlisle, Suite 500
Dallas, Texas  75204

**ATTORNEYS FOR PLAINTIFFS**

FILED
DALLAS COUNTY
4/5/2018 4:15 PM
FELICIA PITRE
DISTRICT CLERK

Case 3:19-cv-01140-N   Document 1-1   Filed 05/13/19   Page 113 of 121   PageID 120

CAUSE NO. DC-18-01385

| | | |
|---|---|---|
| **JB&A EXTENDED WARRANTIES, LLC** | § § § | **IN THE JUDICIAL DISTRICT** |
| **PLAINTIFF** | § § § | |
| **v.** | § § | **192ND DISTRICT COURT** |
| **VELA WOOD, P.C., RADNEY WOOD, INDIVIDUALLY, AND KEVIN VELA, INDIVIDUALLY.** | § § § § § | |
| **DEFENDANTS** | § | **DALLAS COUNTY, TEXAS** |

**PLAINTIFF'S FIRST AMENDED PETITION**

COMES NOW JB & A Extended Warranties, LLC, Plaintiff in the above-captioned and numbered cause, and files this First Amended Petition complaining of Vela Wood, P.C., Radney Wood, individually, and Kevin Vela, individually, and would respectfully show unto the Court the following:

**I. DISCOVERY CONTROL PLAN**

1.1 Plaintiff affirmatively pleads that discovery should be conducted in accordance with discovery control plan, level 3, under Rule 190.4 of the Texas Rules of Civil Procedure, and Plaintiff hereby moves for entry of a scheduling order upon the appearance of the Defendants.

**II. PARTIES**

2.1 Plaintiff, JB & A Extended Warranties, LLC, is a limited liability company organized under the laws of the State of Texas, authorized to do business in the State of Texas, with a principal place of business in Dallas County, Texas, and has previously appeared in this lawsuit.

2.2 Defendant Vela Wood, P.C. is a professional corporation organized under the laws of the State of Texas. Vela Wood, P.C. may be served with process by serving its registered agent



EXHIBIT D

Kevin M. Vela located at 5307 E. Mockingbird Lane, Suite 802, Dallas, TX 752f06, and it has previously appeared in this lawsuit.

2.3     Defendant Radney Wood is an individual residing in Austin, Texas and he may be served with process at 222 E. Riverside, Apartment 230, Austin, Texas 78704, and he has previously appeared in this lawsuit.

2.4     Defendant Kevin Vela is an individual residing in Dallas, Texas and he may be served with process at 6138 Velasco Avenue, Dallas Texas, 75214 or at 5307 E. Mockingbird Lane, Suite 802, Dallas, TX 75206, which is his place of business, or wherever he may be found.

2.5     Vela Wood, P.C., Kevin Vela, and Radney Wood, individually, will be collectively referred to herein as "Defendants."

### III. JURISDICTION AND VENUE

3.1     This Court has subject matter jurisdiction over this action because the amount in controversy exceeds this Court's minimum jurisdictional limits.

3.2     This Court has personal jurisdiction over Vela Wood, P.C. because it is a Texas professional corporation organized under the laws of the State of Texas and its principal place of business is 5307 E. Mockingbird Lane, Suite 802, Dallas, TX 75206.

3.3     This Court has personal jurisdiction over Radney Wood and Kevin Vela, individually, because they are residents of the State of Texas and this suit, wholly or in part, concerns acts or omissions committed by Radney Wood and Kevin Vela, in the State of Texas.

3.4     Pursuant to Section 15.002(a)(3) of the Texas Civil Practices and Remedies Code, venue is proper in Dallas County, Texas, because Dallas County, Texas is the county in which Vela Wood, P.C.'s principal office in the State of Texas is located.

3.5     Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff states that at this time they seek monetary relief over $1,000,000.

## IV. FACTS

4.1     JB & A Extended Warranties, LLC ("JB&A") is a Texas limited liability company in the business of marketing and selling extended warranties covering heating, ventilation and air conditioning ("HVAC") equipment and other items and has been since 2008. At all pertinent times, Jeff Bohannan ("Jeff") and his wife, Rebecca Bohannan, have been the sole members and owners of JB&A. Defendants are attorneys that were engaged to represent JB&A starting in 2016. Since 2016, Defendants have provided various legal services for JB&A.  In connection with the Defendants providing legal services to JB&A, they invoiced JB&A for such services, and JB&A paid the Defendants the approximate sum of $22,000 for the legal services. This is evidenced by numerous invoices submitted to JB&A, and numerous JB&A checks written to and made payable to the Defendants.

4.2     In addition to his ownership interest in JB&A, Jeff, now and at all pertinent times has held officer positions and had ownership interests in a number of entities that were established and historically utilized for purposes complementary to JB&A's business including without limitation:

      (a)     Administar, LP, a Texas limited partnership ("Administar"), in which Jeff is a limited partner owning a limited partnership interest; and

      (b)     American Warranty Corporation, a Texas corporation ("AWC"), in which Jeff is a shareholder owning shares of stock.

4.3     On or around January 27, 2018, by and through a letter dated January 27, 2018 (the "Termination Letter"), signed and sent by Radney Wood for the Vela Wood, P.C. firm and addressed to Jeff, Defendants provided written notice that both Administar and AWC were

terminating or purporting to terminate their at-will contractual relationship with JB&A effective January 30, 2018 (the "Termination Date").[1]   The Defendants further notified JB&A that it was required to cease selling contracts through AWC after the Termination Date, and that Administar would no longer service JB&A contracts on or after the Termination Date.

4.4     In the past, prior to the sending of the Termination Letter, the Defendants had provided legal services to and on behalf of Administar and AWC (as well as JB&A); however, the services had been paid for exclusively by JB&A.  In short, there was an existing attorney-client relationship between JB&A and the Defendants at the time the Termination Letter was sent (or immediately prior to the letter being sent).

4.5     By the Termination Letter, the Defendants further informed JB&A that they would pursue litigation against JB&A if JB&A continued to sell products or services related to or arising from the contracts with Administar or AWC purportedly terminated as of the Termination Date. In spite of the fiduciary duties owed by the Defendants to JB&A, the Defendants proceeded to put their own self-interest in front of JB&A and in doing so they breached their fiduciary duties to JB&A.

4.6     Defendants failed to disclose that they intended to act, represent and advise Administar and AWC based solely on and in the interest of such entities (based on instructions and communications from partners or members, other than Jeff, who owned no interest in JB&A), and without regard to any detrimental impact or affect that this would have on JB&A.  Importantly, the Defendants never asked JB&A, if JB&A consented to and waived any conflict of interest they might have in representing Administar and/or AWC in connection with matters detrimental to JB&A or otherwise (despite obvious conflicts of interest involved in such representation).

---

[1] Concurrently, with this letter Defendants sent a letter to purporting to remove Jeff from Administar and AWC ("Jeff Termination Letter").

**PLAINTIFF'S FIRST AMENDED PETITION**                                                                 Page 4

4.7     Upon information and belief, the Defendants actively engaged in wrongful conduct and behavior to cause financial harm to JB&A by providing legal advice to Administar and AWC, and causing Administar and AWC to take actions and positions directly detrimental to, and clearly not in the best interest of JB&A.

4.8     Furthermore, the Defendants breached their fiduciary duties owed to JB&A by taking the knowledge and information that had been provided by JB&A and using this information to the detriment of JB&A. More particularly, Defendants wrongfully used knowledge and information that they had related to JB&A's corporate structure and ownership, internal business structure, and its contractual relations and operations, to the detriment of JB&A. Due to the actions of Defendants, JB&A has been forced to incur unnecessary attorneys' fees and costs to rectify the actions of Defendants.

4.9     Based on the foregoing, the Defendants have breached their fiduciary duties to JB&A, violated the Canons of Ethics, and caused damages to JB&A.

## V. CAUSES OF ACTION

5.1     <u>Alternative Pleadings</u>.  To the extent necessary, each of the claims set forth below is pleaded in the alternative. Plaintiff incorporates all paragraphs above and below as if fully stated herein.

**COUNT 1:     <u>Breach of Fiduciary Duties by Defendants</u>**

5.2     Defendants' acts and omissions described herein constitute breaches of fiduciary duties. Defendants are attorneys that represented Plaintiff as recently as December 2017. Accordingly, Defendants owed duties of the highest fidelity and loyalty to Plaintiff. Defendants' above-referenced actions and/or omissions constitute breaches of their fiduciary duties to Plaintiff. As such, Defendants' breaches directly and proximately caused and continues to cause actual and

consequential damages to Plaintiff. Plaintiff's injury resulted from Defendants' intentional deceit, gross negligence, malice, or actual fraud, which also entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code §41.003(a).  As a result, Plaintiff has been damaged in an amount within the jurisdictional limits of this Court, for which it now sues.

**COUNT 2:**   **Fraud**

5.3   Defendants made actual misrepresentations to Plaintiff. Furthermore, the Defendants failed to disclose material information to Plaintiff. Defendants knew these representations were false. Plaintiff relied on the representations of Defendants which directly and proximately caused and continues to cause actual and consequential damages to Plaintiff in excess of the minimum jurisdictional limits of this Court. Plaintiff's injury resulted from Defendants' intentional deceit, gross negligence, malice, or actual fraud, which also entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code §41.003(a). As a result, Plaintiff has been damaged in an amount within the jurisdictional limits of this Court, for which it now sues.

**COUNT 3:**   **Negligence/Gross Negligence**

5.4   Defendants' acts and omissions described herein constitute negligence. Defendants owed a duty to Plaintiff and breached that duty when Defendants failed to exercise that degree of care that a reasonably prudent person would in a similar situation. Defendants' acts and/or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, when viewed from the standpoint of Defendants. Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights and/or welfare of Plaintiff. As a direct and proximate result of such negligence and/or

gross negligence, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which it now sues.

### VI.   ACTUAL DAMAGES, EXEMPLARY DAMAGES, ATTORNEYS FEES, COSTS, AND INTEREST

6.1    Actual Damages.  As a result of the wrongful acts of Defendants, as alleged above, Plaintiff has suffered injuries and actual damages in a sum in excess of this Court's minimum jurisdictional limits. Plaintiff seeks to recover all such actual damages from Defendants occasioned by their wrongful acts and/or omissions.

6.2    Disgorgement.  Plaintiff also pleads for disgorgement of any and all monies paid by Plaintiff to Defendants.

6.3    Exemplary Damages.  As described above, Defendants' breach of their fiduciary duties to Plaintiff, therefore, exemplary damages should be awarded against Defendants and in favor of Plaintiff.  Defendants acted with actual malice and a gross disregard for the rights of Plaintiff with the knowledge and intent that harm would result to the Plaintiff as a result of Defendants' conduct. Plaintiff seeks to recover exemplary or punitive damages in a sum as may be reasonably set in this case.

6.4    Attorneys' Fees and costs.  For all counts, Plaintiff pleads for the recovery of its attorneys' fees and expenses, and Court costs, to the fullest extent of applicable law.

6.5    Pre-judgment and Post-judgment interest.  For all counts, Plaintiff pleads for pre-judgment and post-judgment interest to the fullest extent of applicable law.

### VII.   CONDITIONS PRECEDENT

7.1    All conditions precedent to Plaintiff's right to the relief sought herein have been performed or have occurred.

## VIII.   JURY DEMAND

8.1     Pursuant to Rule 216 of the Texas Rules of Civil Procedure, Plaintiff hereby requests a jury trial and has tendered, or will tender, the requisite fee.

### <u>PRAYER</u>

ACCORDINGLY, Plaintiff respectfully requests that Defendants be cited to appear and answer, and that Plaintiff, upon final hearing or trial of this cause, be granted judgment against Defendants awarding Plaintiff its actual and consequential damages, disgorgement of all attorney's fees paid by Plaintiff to Defendants, exemplary damages against Defendants, reasonable and necessary attorneys' fees and costs (insofar as is permitted by law), pre- and post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

/s/ Frank Hill
Frank Hill
State Bar No. 09632000
fhill@hillgilstrap.com
Gregory A. Eyster
State Bar No.  24054562
geyster@hillgilstrap.com
Hunter Cox
State Bar No.  24101654
hcox@hillgilstrap.com
M. Scott Stooksberry
State Bar No. 19311100
msstooksberry@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 W. Abram
Arlington, Texas 76013
(817) 261-2222
(817) 861-4685 fax

*and*

Blake L. Beckham
State Bar No. 02016500
blake@beckham-group.com
Jose M. Portela
State Bar No. 90001241
jose@beckham-group.com
THE BECKHAM GROUP, P.C.
3400 Carlisle, Suite 500
Dallas, Texas 75204

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I certify that on the 5th day of April, 2018, I served a copy of the foregoing on the

attorney of record listed below by e-mail:

Jacob B. Kring (jacob@hedrickkring.com)
Laura M. Fontaine (laura@hedrickkring.com)
Hedrick Kring, PLLC
1700 Pacific Avenue, Ste. 4650
Dallas, Texas 75201
Telephone: (214) 880-9600
Fax: (214) 481-1844

*/s/ Frank Hill*