IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

VELA WOOD PC, *et al.*,  §
§
     Plaintiffs,  §
§
v.  §     Civil Action No. 3:19-CV-1140-N
§
ASSOCIATED INDUSTRIES  §
INSURANCE COMPANY, INC.,  §
§
     Defendant.  §

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiffs Vela Wood PC, Radney Wood, and Kevin Vela's (collectively, "Plaintiffs") motion for summary judgment and Defendant Associated Industries Insurance Company, Inc.'s ("Associated Industries") motion for summary judgment [16], [21].  Because Plaintiffs' notice of a Claim was untimely, the Court denies Plaintiffs' motion and grants Defendant's motion.

### I. ORIGINS OF THE DISPUTE

#### A. *The Insurance Policies*

Defendant Associated Industries issued Plaintiffs its policy number AES1045271 01 (the "2017 Policy"), effective March 6, 2017 to March 6, 2018.  App. to Pls.' Mot. for Summ. J. at 6 [18].   In 2018, Associated Industries issued Plaintiffs policy number AES1045271 03 (the "2018 Policy"), effective March 6, 2018 to March 6, 2019.  *Id.* at 53. In pertinent part, the 2017 Policy and 2018 Policy state that as "a condition precedent to coverage, the Insured shall provide the company written notice of any Claim made against

MEMORANDUM OPINION AND ORDER – PAGE 1

any Insured as soon as practicable, but in no event later than: (i) the expiration date of this Policy; (ii) the expiration of the Automatic Extended Reporting Period; or (iii) the expiration of the Optional Extended Reporting Period, if purchased." *Id.* at 25. Under the terms of both the 2017 Policy and 2018 Policy, a "Claim" is defined as "a written demand received by the Insured for monetary Damages which alleges a Wrongful Act," including "the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding." *Id.* at 18.

### B. The Underlying Lawsuit and this Case

On January 31, 2018, JB&A Extended Warranties, LLC ("JB&A") filed a suit against Plaintiffs and asserted claims of breach of fiduciary duty, fraud, and negligence. *Id.* at 100. Plaintiffs assert that this suit did not constitute a "Claim" but nonetheless gave notice of the underlying petition to their retail insurance broker Higginbotham Insurance Agency, Inc. ("Higginbotham") within the 2017 Policy period. JB&A amended its petition to include specific factual allegations on April 5, 2018. Plaintiffs gave Associated Industries notice of a Claim by at least May 17, 2018. Then, Associated Industries denied coverage for Plaintiffs against the underlying suit, alleging that the notice was untimely.

Plaintiffs brought this case in state court seeking declaratory judgment that Associated Industries had a duty to defend the underlying lawsuit. Associated Industries removed to this Court based on diversity jurisdiction and counterclaimed for declaratory judgment that it did not have a duty to defend. Both sides now move for summary judgment.

MEMORANDUM OPINION AND ORDER – PAGE 2

## II. LEGAL STANDARDS

### A. *Legal Standard for Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the Court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex Corp.*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in her favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, a nonmovant does not satisfy her burden "with some

metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal quotations and citations omitted).   Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

### III.   THE COURT DENIES PLAINTIFFS' MOTION AND GRANTS DEFENDANT'S MOTION

Plaintiffs make three alternative arguments that their notice was timely and Associated Industries has a duty to defend Plaintiffs from the underlying lawsuit.   First, Plaintiffs contend that they had no duty to report the original petition because it did not constitute a "Claim."   In the alternative, Plaintiffs claim that their notice to Higginbotham satisfied their notice obligation to Associated Industries.   Finally, Plaintiffs argue that their notice to Associated Industries was timely because nonrenewal of the 2017 Policy triggered an automatic 90-day extension of the reporting period.   Because these arguments are unpersuasive, the Court denies Plaintiffs' motion and grants Defendant's motion for summary judgment on the duty to defend.

#### A.   JB&A's Original Petition Constituted a Claim

Plaintiffs argue that the original state court pleading was devoid of factual allegations and consisted solely of legal conclusions.   But the Rule 12(b)(6) pleading standard in federal court is not the correct test for whether a lawsuit seeking damages alleges a Wrongful Act under the 2017 Policy.   The Court looks instead to the language of the insurance policy to determine whether JB&A's original petition constituted a "Claim."

MEMORANDUM OPINION AND ORDER – PAGE 4

*RSUI Indemnity Co. v. The Lynd Col.*, 466 S.W.3d 113, 118 (Tex. 2015) ("We begin our analysis with the language of the contract because it is the best representation of what the parties mutually intended.").

"Interpretation of an insurance policy is a question of law." *Guaranty Nat. Ins. Co. v. North River Ins. Co.*, 909 F.2d 133, 135 (5th Cir. 1990). "An insurance policy is a contract, generally governed by the same rules of construction as all other contracts." *RSUI Indemnity Co.*, 466 S.W.3d at 118. If an insurance policy is ambiguous, courts will adopt the construction that favors coverage. *Id.*; *see also Gore Design Completions, Ltd. V. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008). Unless the policy dictates otherwise, the Court will give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *RSUI Indemnity Co.*, 466 S.W.3d at 118.

Under the terms of both the 2017 Policy and 2018 Policy, a "Claim" is "a written demand received by the Insured for monetary Damages which alleges a Wrongful Act," including "the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding." App. to Pls.' Mot. for Summ. J. at 25. The policies define "Wrongful Act" to mean "any actual or alleged act, error or omission in the rendering or failure to render Professional Services." *Id.* at 22. "Professional Services" means services "provided by any Insured to others as a lawyer, mediator, arbitrator, or notary public but solely for services on behalf of Named Insured." *Id.*

MEMORANDUM OPINION AND ORDER – PAGE 5

Plaintiffs contend that a "Claim is defined in such a way that it must allege facts that inform the insured of the act, error, or omission that was actually or allegedly committed . . . before [the insured] must report it."  Pls.' Mot. for Summ. J. at 4 [16].  The Court disagrees.  The interpretation proposed by Plaintiffs is akin to the Rule 12(b)(6) pleading standard, which requires a claim to have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 677–78.  Here, the insurance policies contain no such requirement of "facial plausibility."  Instead, they only require that the written demand state "any actual or alleged act, error or omission in the rendering or failure to render Professional Services," and that such allegations are within the scope of coverage even when they are "groundless, false, or fraudulent."  App. to Pls.' Mot. for Summ. J. at 17, 25.  Whether JB&A's original petition constituted a Claim depends on the language of the insurance policy, not a facially plausible pleading standard.

The original petition in the underlying lawsuit constitutes a Claim for two reasons.  First, it was the "service of suit or a civil proceeding . . . which is commenced by the filing of a complaint, motion for judgment, or similar proceeding."  *Id.* at 25.  The original petition clearly meets this definition because it initiated the underlying suit.  *See, e.g.*, *Emcode Reimbursement Solutions Inc. v. Nutmeg Ins. Co.*, 512 F. Supp. 2d 603, 610 (N.D. Tex. 2007) (service of complaint satisfied "Claim" definition).  Second, the original petition was a written demand for monetary Damages which alleges a Wrongful Act.  Here,

MEMORANDUM OPINION AND ORDER – PAGE 6

the Court compares the language of the JB&A original petition to the definition of a Wrongful Act.  *See Administaff, Inc. v. Am. Intern. Speciality Lines Ins. Co.*, 75 F. App'x. 239, 242 (5th Cir. 2003) (unpublished) (comparing language of the policy with the underlying allegations).    JB&A alleged that Plaintiffs' "actions and/or omissions constitute[d] breaches of their fiduciary duties" and that Plaintiffs "made actual misrepresentations" to JB&A.  App. to Pls.' Mot. for Summ. J. at 102.  The facts of the petition allege that Plaintiffs were providing services as a lawyer at the time of these Wrongful Acts.  *Id.*  The original petition further states that "[a]s a result of the wrongful acts of [Plaintiffs] . . . [JB&A] suffered injuries and actual damages." *Id.* at 103.  JB&A's original petition satisfies the definition of a Claim because it asserts "actual or alleged act[s], error[s], or omission[s] in the rendering or failure to render Professional Services." *Id.* at 22.  While Plaintiffs cite to cases suggesting that alleged facts may clearly place an underlying lawsuit outside the scope of coverage, the original petition plainly "related to errors or omissions arising out of the rendering of professional services and sought damages." *Emcode Reimbursement Solutions, Inc.*, 512 F. Supp. 2d at 608.  The Court determines that the original petition was a written demand received by the Insured for monetary Damages which alleged a Wrongful Act.  Thus, the Court holds that the original petition constituted a Claim under the 2017 Policy as a matter of law.

Under the terms of the 2017 Policy, Claims arising out of the same Wrongful Acts shall be considered first made during the applicable policy period of the earliest Claim. App. to Pls.' Mot. for Summ. J. at 25.  A review of the original and amended petitions reveals the same causes of actions: breach of fiduciary duties, fraud, and negligence.  *Id.*

MEMORANDUM OPINION AND ORDER – PAGE 7

at 102–03, 110–11.  Because JB&A's amended petition arises out of the same Wrongful Acts alleged in the original petition, the Court determines that Plaintiffs were required to give notice to Associated Industries during the 2017 Policy period.  *Id.* at 25; *see also Emcode Reimbursement Solutions, Inc.*, 512 F. Supp. 2d at 610 (late notice of initial complaint precluded coverage of an amended complaint under a subsequent policy).  Thus, Plaintiffs were required to give written notice to Associated Industries during the 2017 Policy period, or Extended Reporting Period, if applicable.  App. to Pls.' Mot. for Summ. J. at 17.

### B.  *Plaintiffs' Report to Higginbotham Did Not Satisfy the Notice Requirement*

Plaintiffs contend that their notice to retail broker Higginbotham constituted notice to Associated Industries because Higginbotham was Associated Industries' agent under section 4001.051(b) of the Texas Insurance Code.  Because Plaintiffs offer no evidence in the summary judgment record to show that Higginbotham had authority to receive notice of Claims, the Court holds that Plaintiffs' report to Higginbotham did not satisfy Plaintiffs' obligation to report to Associated Industries.

"[G]enerally speaking, an insurance broker is considered the agent of the insured; if the insured reports a claim to the broker, but the broker fails to report it to the insurer, the insured is not relieved of his notice obligation."  *Clarke v. Allianz Global Risks U.S. Ins. Co.*, 639 F. Supp. 2d 751, 757 (N.D. Tex. 2009) (citing *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex. App. – Corpus Christi 1998, pet. denied)).  However, "Texas courts have recognized that, under some narrow sets of circumstances, an insurance agent may be deemed to have acted as the agent of both the insured and the insurer."

MEMORANDUM OPINION AND ORDER – PAGE 8

*Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318 (5th Cir. 2005). An insurance company may be estopped from denying that a broker is its own agent if the broker had previously performed various functions on the insurer's behalf. *Duzich*, 980 S.W.2d at 865 (agent may have apparent authority to receive claims if they had previously received claims for insurer).

The Texas Insurance Code's definition of "agent" is not dispositive to the question of agency when applied outside of the Insurance Code. *See Monumental Life Ins. Co.*, 403 F.3d at 322 n.23 (stating that Monumental Life was an agent "for these acts under the [Texas Insurance Code] § 4001.051(b)"); *Clarke*, 639 F. Supp. 2d at 757 ("Texas Insurance Code's definition of 'agent' is for the purposes of the code"); *Penn-America Ins. Co. v. Zertuche.*, 770 F. Supp. 2d 832 (W.D. Tex. 2011) ("With regard to Texas Insurance Code claims, the Code specifically defines who qualifies as an agent for the purpose of attributing liability for violations of code provisions.") (citing TEX. INS. CODE. § 4001.051). The Court turns to general principles of agency to determine the scope of Higginbotham's authority. *Clarke*, 639 F. Supp. 2d at 757.

The authority of an agent to sell and collect premiums may be delineated from the authority of that agent to handle claims. *See Berkley Regional Ins. Co. v. Philadelphia Indem. Ins. Co.*, 600 F. App'x 230, 235–36 (5th Cir. 2015) (finding that insurance broker had authority to procure policy but not for receiving notice of suits and claims); *Clarke*, 639 F. Supp. 2d at 757 (same). Thus, retail brokers may be agents of the insurer for the purpose of the Insurance Code but not for receiving notice of claims.

Here, the Court determines that Plaintiffs' notice to Higginbotham did not satisfy their notice obligation to Associated Industries.  Plaintiffs have offered no summary judgment evidence to show that Higginbotham had previously processed claims on behalf of Associated Industries or that Higginbotham had the authority, expressly or impliedly, to receive notice of claims on behalf of Associated Industries.  Because Higginbotham failed to report to Associated Industries, the Court holds that Plaintiffs' report to Higginbotham did not satisfy their obligation to give notice to Associated Industries.

### C. Plaintiffs' Report to Associated Industries Was Untimely Under the 2017 Policy

Plaintiffs argue that their notice to Associated Industries on May 17 was timely under the Automatic Extended Reporting Period of the 2017 Policy.  Under both policies, cancellation or nonrenewal of the policy automatically extended the reporting period by 90 days.[1]  Plaintiffs contend that, because the 2018 Policy varied from the terms of the 2017 Policy, the 2018 Policy was not a renewal, but a new policy entirely.  Because both parties agreed to the change in coverage, the Court determines that the 2018 Policy was a renewal

---

[1]   **Automatic Extended Reporting Period**. If the **Company** or the **Named Insured** shall cancel or refuse to renew this Policy, then the **Company** shall provide the **Named Insured** an automatic and noncancelable [sic] extension of this Policy, subject otherwise to its terms, Limits of Liability, exclusions and conditions, to apply to **Claims** first made against the Insured during the ninety (90) days immediately following the effective date of such nonrenewal or cancellation, for any **Wrongful Act** committed before the effective date of such nonrenewal or cancellation and after the **Retroactive Date**, and otherwise covered by this insurance. This Automatic Extended Reporting Period shall terminate after ninety (90) days from the effective date of such nonrenewal or cancellation.

App. to Pls.' Mot. for Summary Judgment at 26, 75.

MEMORANDUM OPINION AND ORDER – PAGE 10

of the 2017 Policy.  Thus, the 2018 Policy did not trigger the 90-day extended reporting, and Plaintiffs' May 17 notice to Associated Industries was untimely.

"It is the general rule that a renewal of a policy constitutes a separate and distinct contract for the period of time covered by the renewal, except where the provisions of the extension certificate show that the purpose and intention of the parties was not to make a new contract but was to continue the original contract in force." *Great Am. Indem. Co. v. State*, 229 S.W.2d 850, 853 (Tex. App. – Austin 1950, writ ref'd).  Renewal policies include "new contracts that begin again, recommence, resume, reestablish, recreate, and replace a preceding policy without a lapse of coverage." *Berry v. Tex. Farm Bureau Mutual Ins. Co.*, 782 S.W.2d 246, 249 (Tex. App. – Waco 1989, no pet.) (internal quotations omitted).  A renewal need not be upon the same terms as a prior policy when both parties clearly agree to incorporate different terms into the renewal policy. *See, e.g.*, *Materials Evaluation and Tech. Corp. v. Mid-Continent Cas. Co.*, 519 F. App'x 228, 232 (5th Cir. 2013) (holding subsequent policy with different terms to be a renewal).

Plaintiff alleges that a material change in coverage constitutes a rejection of the prior policy and the creation of a new one.  While there is a presumption that renewals are upon the same terms as the original policy, both parties can agree to renew an insurance policy under different terms. *See id.* at 231 (concluding that a clear agreement to different terms was still a renewal).  Put simply, a renewed policy is presumed to be on the same terms as the original policy, but different terms do not necessarily constitute nonrenewal. *Id.*

Here, the Court determines that the 2018 Policy was a renewal of Vela Wood's 2017 Policy.  The 2018 Policy Declaration states that it is a renewal of Policy AES1045271, the

MEMORANDUM OPINION AND ORDER – PAGE 11

2017 Policy.  App. to Pls.' Mot. for Summ. J. at 55.  Furthermore, a review of both policies reveals identical Forms and Endorsements Schedules.  *Id.* at 13, 60.  Both policies contain identical provisions for when coverage applies and for the definitions of key terms such as "Claim," "Wrongful Act," and "Professional Services."  *Id.* at 18–22, 67–71.  The only materially different term presented by Plaintiffs is a reduction in the Limits of Liability for the Second Retroactive Date from $500,000 to $100,000 for each Claim, and from $1,000,000 to $300,000 for Aggregate Claims.  *Id.* at 43, 92.  Both parties negotiated and agreed to this renewal of the original policy under modified terms, as evidenced by the replacement of the preceding policy without a lapse of coverage and essentially identical terms other than reduced limits of liability.  Under the terms of the 2017 Policy, the Automatic Extended Reporting Period only applies in the event of nonrenewal or cancellation of the policy.  *Id.* at 28.  Because neither of these events occurred, Plaintiffs were required to give notice to Associated Industries by the end of the 2017 Policy Period on March 6, 2018.  Thus, Plaintiffs' notice to Associated Industries on May 17, 2018 was not timely under the terms of the 2017 Policy.

## CONCLUSION

There are no genuine issues of material facts, and Defendant is entitled to judgment as a matter of law.  The Court concludes that Associated Industries does not have a duty to defend Plaintiffs in the underlying JB&A lawsuit.  The Court denies Plaintiffs' motion for summary judgment and grants Associated Industries' motion for summary judgment.

Signed September 10, 2020.

David C. Godbey
United States District Judge